DET 117069

POOR QUALITY ORIGINAL

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **JOHN L. ROSEMAN,**<br>Plaintiff,<br><br>v.<br><br>**INTERNATIONAL UNION,**<br>**UNITED AUTOMOBILE,**<br>**AEROSPACE AND AGRICULTURAL**<br>**IMPLEMENT WORKERS OF AMERICA**<br>**(UAW)** et al.,<br>**FCA US LLC** et al.,<br>Defendants. | Case:2:18-cv-13042<br>Judge: Lawson, David M.<br>MJ: Grand, David R.<br>Filed: 09-28-2018 At 10:21 AM<br>CMP ROSEMAN V. UAW ET AL (NA)<br><br>**JURY DEMAND** |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

There is  another pending, unresolved civil action
arising out of the same transaction or occurrence
alleged in the Complaint (See Workers' Compensation Claim: Exhibit F).

Plaintiff JOHN L. ROSEMAN, brings this action and complaint for damages and demand for jury trial against Defendants, **INTERNATIONAL UNION UNITED AUTOMOBILE  AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) et al., and FCA US LLC et al.** and in support thereof alleges as follows:

### PLAINTIFF

Plaintiff John L. Roseman, an individual residing in Farmington Hills, Oakland County, Michigan, is a citizen and resident of Michigan.

### DEFENDANTS

Defendant FCA is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business in Auburn Hills, Oakland County, Michigan.

Defendant UAW is a labor organization as the term is defined by the NLRA, 29 USC 152(5), and plaintiffs' exclusive bargaining representative under the NLRA, 29 USC 159(a).

1.  This action arises out of Plaintiff's employment with the Defendant FCA US LLC and membership

1

with the Defendant UAW pursuant to the Age, SEX, and Race Discrimination and Retaliation in Employment Act of 1967 as amended and Title VII of the Civil Rights Act of 1964 as amended.

2. Plaintiff, is an employee in a bargaining unit whose representative is the defendant union, INTERNATIONAL UNION UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), herein "UAW".

3. Plaintiff resides in Farmington Hills, Oakland County, Michigan. Plaintiff is employed by FCA and is in a bargaining unit represented by the UAW in the Eastern District of Michigan. Plaintiff is protected by the ECLRA because:

    a. Plaintiff is over the age of 40 years of age;
    b. Plaintiff is a member of a protected class by virtue of age;
    c. At all relevant times Defendant FCA US LLC was Plaintiff's employer and subject to the provisions applicable to employers contained in the ECLRA;
    d. Plaintiff was an employee of the Defendant FCA US LLC within the meaning of ECLRA; Plaintiff suffered from age discrimination, harassment, and a hostile work environment;
    e. Plaintiff engaged in protected activity, for example, plaintiff objected to harassment and complained to defendants of a hostile work environment;
    f. Nothing was done to rectify the Defendants' harassment, discrimination or hostile work environment;
    g. As a result Plaintiff was prejudiced, suffering injury and damages.
    h. Defendant FCA US LLC. is a for profit corporation whose principle place of business is located in Oakland County, Michigan.
    i. Defendant, INTERNATIONAL UNION UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) is located in the City of Detroit, Wayne County, Michigan.
    j. Defendant, FCA US LLC. Headquarters, is located in the City of Auburn Hills, Oakland County, Michigan.

**JURISDICTION**

4. This court has jurisdiction over the Plaintiff's ELCRA claims because the amount in the controversy exceeds $75,000.00 exclusive of interest and cost. Plaintiff resides in the State of Michigan and both Defendants principle places of businesses are located in Michigan.

5. To the extent the claims allege violations of state law, this Court has supplemental jurisdiction

2

over state law claims pursuant to 28 USC 1367, because those claims are so related to the claims arising under federal law that they form part of the same case or controversy.

## VENUE

6. Venue is proper because the events or omissions giving rise to the claims occurred in Macomb County, Michigan, which is encompassed in the Southern District of the Eastern District of Michigan, has agents and employees in the Eastern District of Michigan and maintains headquarters within the Eastern District of Michigan. (See Also Exhibit G: EEOC Dismissal and Notice of Rights, Notice of Suit Rights)

## INTRODUCTION

7. Defendants FCA US LLC, and the UAW failed to properly pursue Plaintiffs complaint of a hostile work environment, to act properly and in compliance with its' own policies on harassment, coercion, intimidation, and threatening behavior. Employer FCA US LLC essentially chose to ignore Plaintiff's complaint, sweep it under the rug and tell him to get tougher. FCA US LLC did not exercise reasonable care to end harassment Plaintiff was subjected to at work. Harassment of co-worker Dominick Amond was sufficiently pervasive as to alter the conditions of employment and create an abusive work environment. Co-worker Dominick Amond, emboldened by the Defendants negligence, endorsement, and a vacuum of order was fully inclined to subject the Plaintiff to harassment, coercion, intimidation and threatening behavior. Plaintiff is seeking recovery for damages and injuries sustained from his being subjected to the aforementioned violative behavior. Defendants FCA US LLC., and the UAW failed to act in a reasonable and principled manor to ensure that the Plaintiff could work in a safe environment and not be subjected to the aforementioned violative behavior of co-workers. Plaintiff has been prejudiced by Defendants. Defendants FCA and the UAW's perfunctory response, fecklessness,

3

apathy, inaction and abatement of basic principles of human rights have given rise to the claims herein and Plaintiff's injuries. Defendant FCA US LLC's Supervisor Jana Hines acknowledged the animus of co-worker Dominick Amond, and conceded in writing that it was unreasonable for Plaintiff to work under such conditions. Likewise, UAW Alternate Chief Steward Keith Hall fully appreciated the animus Plaintiff was subjected to by co-worker Dominick Amond, agreeing that urgent intervention was warranted. Thus, Defendants actions in this case at bar were intentional, unusually egregious, reckless, atrocious and outrageous.

**FACTUAL BACKGROUND**

8. Shortly after Plaintiff arrived, via transfer, to FCA US LLC's Sterling Heights Assembly Plant on or around February 21, 2018, Plaintiff has witnessed his co-worker Dominick Amond maintain a constant campaign of harassment, coercion, intimidation and threatening behavior toward co-workers and supervisors alike including well publicized arrangement to fight a co-worker.

9. Co-worker Dominick Amond once told Plaintiff, your pay rate is higher than mine and "I seriously have a problem with that". Plaintiff was the only person on Team 11's two tone masking crew who was a "Tier 1" production employee and was therefore at a higher pay rate than all other co-workers on the same team.

10. On or about July 25, 2018, Plaintiff, feels that his co-worker Dominick Amond's behavior towards him is becoming increasingly hostile and is in violation of FCA policies (SOC #1-15 and SOC #16-36), such that his co-worker Dominick Amond's behavior could reasonably be viewed as threatening, intimidating, coercive, and harassing.

4

11. On Wednesday July 25, 2018 at around 8:00 PM, Plaintiffs co-worker Dominick Amond criticized him and co-worker Justin J. Henderson for complying with FCA US LLC's supervisors Jana Hines and Christopher J. Kubacki's direct orders pertaining to their jobs. Dominick Amond told Plaintiff and co-worker Justin J. Henderson "y'all just made Chrysler hundreds of millions of dollars". Dominick Amond then intimidated and prevented Plaintiff from performing his job as he was directly ordered and instructed to by FCA US LLC supervisors Jana Hines and Christopher J. Kubacki.

12. On July 25,26, and 27th of 2018, co-worker Dominick Amond sends a series of text messages to 9 co-workers and to Plaintiff with the clear intent of organizing a hostile sentiment among these team members towards Plaintiff. The text messages are clearly coercive and because they were also sent to Plaintiff, they were intended to be intimidating and provocative.

13. Dominick Amond, as evidenced by his FCA work record has displayed extremely violent and threatening behavior towards co-workers in the past, Plaintiff therefore, wisely chose not to engage Dominick Amond or respond to his series of harassing text messages, but chose to instead promptly reach out to FCA management by sending FCA supervisors Jana Hines and Julian Brunson an email requesting intervention.**(See EXHIBIT A, Pages 2-6)**

14. At approximately 4:30 PM, July 26, 2018, Plaintiff speaks with FCA supervisor Jana Hines and alerts her to the fact that he has sent her an email saying "Jana please check your email". Jana Hines agreed to do so. Shortly thereafter, supervisor Jana Hines came back to speak with Plaintiff regarding the email. Jana Hines said to Plaintiff, that "No one should have to work like this". She assured Plaintiff that swift action would be taken and that she would engage the FCA Labor Relations representative in about an hour. **(See EXHIBIT D, Page 12)**

15. Dominick Amond a member of Team 11, 9130 Paint Shop has been grooming Team 11 with threats of violence and hostility since Plaintiff began reporting to the team in February 2018. Around this time Team 11 member and co-worker Kyanne Gaddis advised FCA management that Dominick Amond threatened her and that " she feared for her life". FCA security personnel was brought to the Tutone [sic] Masking area to investigate the threat alleged by co-worker Kyanne Gaddis. Team 11 member and co-worker, Andre West was one of the persons interviewed by FCA Security personnel. Dominick Amond was disciplined and co-worker Kyanne Gaddis was transferred from "B" shift to "C" for her protection. Plaintiff's rights were not similarly protected on July 26, 2018 when he alerted FCA supervisors Jana Hines and Julian Brunson via email that the notorious hostile co-worker Dominick Amond had now turned his aggression towards him.

16. At no time since Plaintiff complained of a hostile work environment to FCA US LLC supervisors Jana Hines and Julian Brunson in email on July 26, 2018 to the time of this filing has anyone from FCA US LLC's labor relations department reached out to Plaintiff to determine or ask why Plaintiff felt threatened or feared for his personal safety after becoming the focus of a pugilistic, half cocked, short fused, and combative bully co-worker Dominick Amond.

17. Co-worker Dominick Amond begin focusing his intimidation and harassment on Plaintiff when Plaintiff filled in as Team Leader on Wednesday July 25, 2018. **(See July 25, 2018, 7:20 PM Text mssg: EXHIBIT D, Page 2)**

18. Wednesday July 25, 2018 in the North Paint Shop, Dept. 9130 of the Sterling Heights Assembly Plant, more Tutone Units were scheduled for production than the present Tutone Masking process could handle. FCA supervisor Jana Hines asked Plaintiff to use any surplus manpower on Team 11 to augment the process of masking Tutones in an effort to keep up and prevent a

6

shutdown of the entire paint shop.

19. Plaintiff's co-worker Dominick Amond was angered with his co-workers for complying with FCA US LLC's production managements order regarding the allocation of additional manpower to the tutone masking area. The next day, Thursday July 27, 2018 while Plaintiff is speaking with co-workers Jacques Burrell and Kevin Newman, Dominick shows physical aggression and hostility and rushes up from about 20 yards away down an aisle to Plaintiff yelling "what's going on?" and then subsequently, scolds Team 11 member and co-worker Kevin Newman saying that "Y'all never should have done that!" referring to Kevin Newman's roll in the additional allocation of manpower to the Tutone masking process. (See EXHIBIT D, Page 12)

20. On Wednesday, July 25, 2018 at about 10:00 PM, FCA Supervisor Christopher J. Kubacki orders Plaintiff over two way radio to be sure to continue to double up on the "Tu-tone" masking operation in a sustained effort to deal with the unusual deluge of units requiring the two toned truck masking application. Plaintiff's co-worker Dominick Amond makes it clear to Plaintiff through hostility, coercion, intimidation and threatening behavior that he is not going to allow Plaintiff to do his job as ordered by FCA US LLC Supervisors Christopher J. Kubacki and Jana Hines.

21. At about 8:00 PM on Wednesday, July 25, 2018, Plaintiff's co-worker Dominick Amond comes to the tutone masking area per team 11's rotation arrangement. At this time, Dominick Amond commences to criticize Plaintiff and co-worker Justin J Henderson for doing their jobs as they were instructed and ordered to by FCA US LLC supervisors Jana Hines and Christopher J. Kubacki saying "y'all just made Chrysler hundreds of millions of dollars". Plaintiff was instructed by FCA US LLC supervisors Christopher J. Kubacki and Jana Hines to continue to "double up" on the

7

tutone masking operations, but Dominick Amond prevented Plaintiff from doing his job as instructed. Christopher J. Kubacki specifically, radioed Plaintiff to tell him to continue augmenting manpower in the tutone masking area as he had been instructed to do earlier by Jana Hines.

22. Later, on Wednesday, July 25,2018 at about 11:00 PM, Supervisors Jana Hines and Christopher J. Kubacki came to the tutone masking area to investigate why it was taking Dominick Amond so long to mask a unit for the tutone paint application. In an unintelligible rant, Dominick Amond told FCA supervisors Jana Hines and Christopher J. Kubacki that Plaintiff is to blame, because he did not help him mask tutone units. FCA supervisor Jana Hines then asked Dominick Amond if he would like someone to help him mask the tu-tone units. Dominick Amond replied "No, I don't want nobody working in my space". Co-worker Dominick Amonds' explanation for his intentional slowdown of production is not cognizable. Dominick Amond also told supervisors Jana Hines and Christopher J. Kubacki that he had a problem with Plaintiff because Plaintiff was allegedly "changing the rules" apparently referring to the allocation of surplus manpower to the tutone masking area. Dominick Amond, however, would never explain to supervisors Jana Hines nor Christopher J. Kubacki what exactly he meant when he alleged that Plaintiff was "changing the rules". When Plaintiff came into this conversation between Dominick Amond and the FCA supervisors, Plaintiff's co-worker Dominick Amond becomes visually agitated and commences to lash out at Plaintiff directly but retreats. Jana Hines and Christopher J. Kubacki then encourage Dominick Amond over and over, "please go ahead, say what you were going to say". Dominick Amond declines, saying "what he had to say had nothing to do with tutones" and that what he had to say "was gonna take things in a whole nuther [sic] direction". Plaintiff is not interested in

8

finding out what direction that is in which Dominick Amond alludes to. Plaintiff, in fact, changed no rules but followed the orders of FCA supervisor Jana Hines regarding manpower. Dominick Amond's theory is that Plaintiff has ruined his job by bringing FCA's managements' attention to the area; making Team 11 work areas "Hot" or under surveillance of FCA management (**See Text Messages: EXHIBIT D,Page 6 ~ 12:05 AM txt and 3:59 PM Txt on Page 8**). Dominick Amond therefore launches a campaign to harass, intimidate and distress Plaintiff with threatening behavior and a series of text messages sent to Plaintiff and 8 other members of Team 11 including UAW Alternate Chief Steward Keith Hall.

23. The increased presence of management in Team 11 work area was due to a flood of Tutone units requiring the masking process. In this scenario, Tutone units unprocessed will back up in a queue and can quickly shut down production of both tutone and non tutone units.

24. Plaintiff's mental anguish and distress compounded as he realize the deluge of Tutone unit would not subside anytime soon and nor would Dominick Amond's harassment of blaming him for the increased presence of worried FCA US LLC. managers anxiously insisting that the masking process be done faster. There was no way for Plaintiff to support FCA management's interest in dealing with the deluge of tutone units without fueling co-worker Dominick Amond's premise for his harassment of Plaintiff.

25. Thursday July 26, 2018 at around 6:00 PM, Plaintiff was summoned via two way radio, to a meeting in the "Conference Room" by FCA supervisor Jana Hines. Persons present at this meeting were: UAW representative Keith Hall, Jana Hines and Plaintiff.

26. In this meeting, Plaintiff went into further detail concerning Dominick Amond's general campaign of harassment in the area of Team 11 and his present focus on Plaintiff.

27. In this meeting FCA supervisor Jana Hines assured Plaintiff that co-worker Dominick Amond would be immediately removed from the area. She also said that he would be disciplined for his actions of hostility and harassment.

28. UAW Alternate Chief Steward Keith Hall agreed that Plaintiff should be protected and that Dominick Amond should be immediately and permanently removed from Team 11.

29. UAW Alternate Chief Steward Keith Hall also says to Plaintiff and Jana Hines, that pursuing discipline for Dominick Amond's behavior would potentially force him to deal with FCA Labor Relations representative Cynthia Johnson if alternate FCA Labor Relations personnel was not available. UAW Alternate Chief Steward Keith Hall lamented in this meeting with Plaintiff and Jana Hines that he did not want to deal with Cynthia Johnson citing the fact that he lost a battle with her yesterday when someone he was representing got 3 days off. It now seems that the UAW representative is more interested in protecting his statistical loss record than having a principled outcome for Plaintiff.

30. Over and over, FCA supervisor Jana Hines emphasized how critically urgent and necessary disciplinary action was. .

31. UAW representative Keith Hall agreed with FCA Supervisor Jana Hine's persuasion that Plaintiff's rights should be protected and that given the facts on the ground, that, Dominick Amond should be disciplined and permanently removed from Team 11, 9130, Paint Shop.

32. After this meeting, UAW Alternate union Chief Steward Keith Hall told Plaintiff that he wanted to apologize for what Plaintiff was enduring given he became the focus of Dominick Amond's aggression as a result of filling in for him (Keith Hall) as Team Leader. Keith Hall is the Team Leader for Team 11, 9130 Paint Shop and is also the alternate UAW Chief Steward for department 9130.

10

33. At 8:26 PM, UAW representative Keith Hall sends message to Plaintiff via text, asking Plaintiff to send Dominick Amond to the UAW union office. (**See EXHIBIT D, Page 10** )

34. UAW Alternate union Chief Steward Keith Hall is unwisely asking Plaintiff to approach someone who is hostile towards Plaintiff, effectively asking Plaintiff to put himself in a potentially harmful and volatile situation. Plaintiff does so with great apprehension and anguish. (**See EXHIBIT D, Page 10**)

35. Plaintiff sent UAW Alternate union Chief Steward Keith Hall a text message at 8:37 PM stating that Dominick Amond had "been sent". (**See EXHIBIT D, Page 10**)

36. At 10:00 Plaintiff sees that co-worker Dominick Amond is still in the facility as he approaching the Tutone Masking booth to now work in the same area as Plaintiff whereas he had not been in such close proximity to the Plaintiff on this day of July 26, 2018.

37. Plaintiff is traumatized and immensely distressed given the promises and assurances of both UAW and FCA officials that Dominick Amond would be permanently removed from the area and that he would be disciplined. Specifically, FCA supervisor Jana Hines stated in the meeting with UAW representative and Plaintiff, that at a minimum,co-worker Dominick Amond would be removed from the area permanently and that he was going home for the balance of the shift.

38. At no time prior to Dominick Amond returning at 10:00 PM on July 26, 2018 was Plaintiff advised or warned that Dominick Amond would be returning to the area to work with him.

39. At 11:51, Plaintiff sends his Wife a text message stating that Dominick Amond was "Not gone . . . as I was told would be the case". (**See EXHIBIT D, Page 14**)

40. Plaintiffs' wife replies: "What?; That's crazy".

41. At no time was Plaintiff asked if he was OK with Dominick Amond being returned to the area.

42. At no time was Plaintiff offered an opportunity to leave the area Himself, pending Dominick Amond's return so Plaintiff is essentially forced by Defendants to close confinements with a mad man who has demonstrated to FCA US LLC. supervision that he is unreasonable, irrational, and hostile towards his co-workers.

43. At 12:07 AM, UAW Alternate Chief Steward Keith Hall sends Plaintiff a text message saying "John when you're not busy can you come to the union office?". (See EXHIBIT D, Page 10)

44. FCA supervisor Jana Hines summons Plaintiff from the Tutone Masking booth at approximately 12:25 AM and asked if UAW Alternate Chief union Steward Keith Hall had spoken with him. Plaintiff replied "no". She then said to Plaintiff, "after you send the next unit, go see UAW Representative Keith Hall in the union office".

45. At 12:28 AM Plaintiff responds to UAW Alternate Chief union Steward Keith Hall via text message and says "OK". (EXHIBIT D, Page 10)

46. Plaintiff then walks over to the union office and then send UAW Alternate Chief Steward Keith Hall another text message saying, "I'm here now".

47. UAW Alternate Chief Steward responds via text: "You at the union office?".

Plaintiff answers via text: "Yes". (EXIBIT D, Page 10)

48. Shortly thereafter, UAW Alternate Chief Steward walks up to union office and escorts Mr. Plaintiff inside.

49. (Approximately 1:00 AM, in union office) UAW Alternate Chief Steward Keith Hall told Plaintiff that in his meeting with Dominick Amond earlier in the shift (around 8:30 PM), he explained away Plaintiff's approach to work by describing Plaintiff as an "OLD HEAD". UAW Alternate Chief Steward Keith Hall said he told Dominick Amond that "John's an OLD HEAD and so is Kevin

Newman". Plaintiff and co-worker Kevin Newman are both above the age of 40 years old and are the two oldest members of Team 11's Tutone Masking/De-masking crew. Plaintiff and Kevin Newman were accommodating to FCA supervisor Jana Hines urgent request at the beginning of the shift to augment the "Tutone [sic]" masking process with additional manpower.**(See Text Messages: EXHIBIT D, Pages 3 and 4)**

50. UAW Alternate Chief Steward Keith Hall told Plaintiff that he advised Dominick Amond that harassing Plaintiff through the text messages was serious and that his misconduct could have gotten him (Dominick Amond) fired. Keith Hall said he told Dominick Amond, "you sent these text messages to nine people!".

51. UAW Alternate Chief Steward Keith Hall tells Plaintiff that Cynthia Johnson was the only FCA Labor Relations representative available and that she was sure to give Dominick Amond 30 days off, therefore he and FCA supervisor Jana Hines did not pursue discipline.

52. UAW representative Keith Hall said that the plan to discipline and permanently remove Dominick Amond from the area was vetoed by UAW Chief Steward of Paint Shop, Dept. 9130, Eddie Smith.

53. UAW Alternate Chief Steward Keith Hall told Plaintiff that UAW Chief Steward Eddie Smith told him by phone that Ken Hubbard would use this disciplinary action taken against Dominick Amond as a precedence for effectively disciplining other FCA union represented employees. Therefore the UAW decided through its' representatives Keith Hall and Eddie Smith that Plaintiff would be collateral damage; effectively breaching its' duty to Plaintiff.

54. UAW Alternate Chief Steward Keith Hall told Plaintiff that UAW Chief Steward Eddie Smith demanded that he mitigate the discipline by not engaging FCA Labor Relations representative

Cynthia Hall and instead handle Dominick Amond themselves.

55. UAW Alternate Steward Keith Hall told Plaintiff that UAW Chief Steward Eddie Smith, told him by phone that, in essence, Plaintiff would have to be collateral damage in the grander scheme of things because allowing FCA management to discipline Dominick Amond would open "Pandora's Box" and embolden FCA supervisor Ken Hubbard to seek similar disciplinary actions against other union represented employees. UAW Chief Steward Eddie Smith rationed it to be legitimate to violate Plaintiff's personal rights to avert the impact of the precedence disciplining Dominick Amond would have.

56. FCA supervisor Jana Hines and UAW officials Keith Hall and Eddie Smith were extreme, outrages, and reckless. Plaintiff has been injured by the unprincipled, unethical, and illegal manor in which FCA and UAW conspired to mislead him and violate his personal rights.

57. Both UAW representative Keith Hall and FCA supervisor Jana Hines agreed that Dominick Amond should be permanently removed from Team 11 and disciplined to protect Plaintiff's personal rights. Therefore when they colluded on non standard, and unprincipled reasons to send Dominick Amond back to work in extreme proximity to Plaintiff, they intentionally inflicted Mr. Plaintiff with emotional distress. This is especially egregious and unconscionable given FCA's supervisor Jana Hines' statement to Plaintiff at approximately 5:00 PM that "NO ONE SHOULD HAVE TO WORK LIKE THIS".

58. FCA and the UAW have proven themselves to be inept in dealing with harassment and unwilling to follow its' own policy of zero tolerance for harassment.

59. FCA supervisor Jana Hines and UAW representative Keith Hall's ultimate decision to conspire in a plan to avert disciplining Dominick Amond was unprincipled and far removed from FCA's zero

tolerance policy on harassment.

60. The traumatic experience of harassment, and the feckless responses of both FCA and UAW makes Plaintiff feel extreme emotional distress and mental anguish acutely derived of his employment with FCA.

61. Plaintiff has been repeatedly subjected to harassment by his co-workers, and therefore has no confidence in FCA or the UAW to mitigate violence and fulfill their obligation to ensure that he is able to work in an environment free from the harassing and violent behavior displayed by his co-workers. (**See EXHIBIT C, Pages 2--14**)

62. The conspiracy between the UAW and FCA to violate Plaintiff's rights is wrongful, illegal, and tortious. Plaintiff has suffered injury as a result of the conspiracy.

63. Further, this is unusually egregious and traumatizing to the Plaintiff because this is the same violative conduct perpetrated against Plaintiff by Defendants FCA US LLC and the UAW on or about December 21, 2015 until on or about November 5, 2016. (**See EXHIBIT C, Pages 2-14**)

64. On December 21, 2015 Plaintiff's wife sent a sealed self-addressed envelope via United States Postal Service containing a copy of a UAW Union Member Statement wherein Plaintiff complained of a co-worker's harassment and hostility that he had been subjected to (**See EXHIBIT C, Pages 15 and 16**). The same UAW Union Member Statement was also delivered by Plaintiff in person to UAW Chief Union Steward Kalu Jones and also delivered by Plaintiff in person to FCA US LLC Labor Relations Supervisor Jo'Lena Brown. From December 21, 2015 to now, this complaint has been ignored by FCA US LLC. and UAW. Plaintiff was willfully and intentionally subjected to this same co-worker's harassment by FCA US LLC and UAW from

15

December 21, 2015 when he made another complaint on or about November 5, 2016. (**See EXHIBIT C: Pages 2-14**)

65. In prior incidents occurring between years 2015 and 2016, at FCA US LLC's Warren Truck Assembly Plant, Attorney Sandra Hanshaw Burink wrote a letter on the Plaintiff's behalf demanding that an investigation be made into a matter very similar to that of this case at bar of Plaintiff being subjected to harassment by a co-worker. (**See EXHIBIT C, Page 2**)

66. FCA ordered an independent investigation into the unresolved matters of harassment Plaintiff complained he was subjected to between years 2015 and 2016. Defendant FCA US LLC arranged for Attorney Deborah Brouwer of Nemeth Law PC to conduct the investigation. (**See EXHIBIT C, Page 14**)

67. Deborah Brouwer of Nemeth Law PC. met with Plaintiff, gave him her business card and informed him that she would be conducting an investigation into the matter and that upon conclusion of the investigation; defendant FCA US LLC. would report to Plaintiff the findings of said investigation. Defendant FCA US LLC never did and Plaintiff never received any results of the investigation. (**See EXHIBIT C, Page 14**)

68. From November of 2015 to the present, apparently, FCA US LLC. nor the UAW has done anything to improve this culture of acceptance and toleration for harassment and hostile work environments.

69. Defendants FCA US LLC and UAW clearly have demonstrated a pattern of this outrageous and egregious conduct and has given the Plaintiff no reason whatsoever to have any confidence in the defendants to ensure Plaintiff's employment with defendant FCA US LLC. can be safe or that harassment will not be tolerated in the work place.

16

70. Plaintiff is currently under Doctor's care and is receiving treatment for acute anxiety resulting from specific traumatic events related to the harassment and hostility of a co-worker that he was intentionally subjected to by Defendants at Defendant FCA US LLC.'s Sterling Heights Assembly Plant on or around July 26, 2018 and July 27, 2018.

**GENERAL ALLEGATIONS**

**COUNT I VIOLATION OF THE AGE DISCRIMINATION in EMPLOYMENT ACT of 1967 AS AMENDED and TITLE VII of the CIVIL RIGHTS ACT OF 1964 as amended; HOSTILE WORK ENVIROMENT**

71. Plaintiff incorporate the preceding paragraphs by reference.

72. Since May 15, 1998, Plaintiff has been employed by Defendant FCA US LLC., and most recently as a full-time Non-skilled laborer.

73. Approximately 5 hours prior to Plaintiff's shift at 11: 48 AM, Wednesday July 26, 2018, Plaintiff advised this employer in an email that he is being subjected to harassment via text messages, by co-worker Dominick Amond, who has also shown physical aggression towards him. Plaintiff asked that something be done. Plaintiff feared for his safety. Plaintiff's request have been ignored. **(See EXHIBIT A, Pages 2-7)**

74. On Thursday July 27, 2018 at 1:00 AM Plaintiff is summoned to UAW union Office by Alternate Chief Union Steward Keith Hall so that he could explain to Plaintiff why no action would be taken in response to Plaintiff's complaint about being subjected to co-worker Dominick Amond's harassment and a hostile work environment **(See text mssg: EXHIBIT D,Page 10)**. Plaintiff was advised by UAW Alternate Chief Union Steward Keith Hall of Local 1700, that harasser was not going anywhere, and that Plaintiff would just have to deal with it, and that the Plaintiff and

17

another employee over 40 in the same department are "Old Heads".

75. Plaintiff believes that he is being subjected to harassment, different terms and conditions, denied the opportunity to file a grievance and subjected to age based discrimination in violation of the Age Discrimination in Employment Act of 1967 as amended and Title VII of the Civil Rights Act of 1964 as amended.

76. Plaintiff also knows of a female co-worker, Kyanne Gaddis, who was subjected to harassment from this same individual and Defendants FCA US LLC. and UAW took immediate action.

77. Further, Plaintiff alleges retaliation in this case at bar because Plaintiff is a whistle blower having alleged misconduct and racial discrimination in Defendants behavior in March of 2018. **(See EXHIBIT B, Pages 2-18)**. Plaintiff text his wife from work on Thursday, July 26, 2018 In response to injuries inflicted upon him by Defendants stating that "I think this may be FCA repay". **(See txt: EXHIBIT D, Page 14)**

## COUNT II VIOLATION OF THE SEX DISCRIMINATION in EMPLOYMENT ACT of 1967 AS AMENDED and TITLE VII of the CIVIL RIGHTS ACT OF 1964 as amended; HOSTILE WORK ENVIROMENT

78. Plaintiff incorporate the preceding paragraphs by reference.

79. Plaintiff knows of a female co-worker, Kyanne Gaddis who was subjected to harassment from this same individual (Dominick Amond) and Defendants FCA US LLC. and UAW took immediate action. Why should Plaintiff be any more impervious to co-worker Dominick Amond's harassment or a hostile work environment?

## COUNT III RETALIATION IN VIOLATION OF THE DISCRIMINATION in EMPLOYMENT ACT of 1967 AS AMENDED and TITLE VII of the CIVIL RIGHTS ACT OF 1964 as amended

80. Plaintiff alleges retaliation in this case at bar because Plaintiff is a whistle blower having alleged

18

misconduct and racial discrimination in Defendants behavior in March of 2018. (**See EXHIBIT B,**

**Pages 2-18**). Both Defendants and their agents and employees had sufficient motive to retaliate.

81. Defendants actions and inaction in this case are unusually egregious, failing to take all

reasonable steps necessary to prevent harassment that was so pervasive, it altered the

conditions of Plaintiffs' employment with FCA US LLC and intentionally created an abusive work

environment.

82. Court finds employer's failure to investigate employee's alleged harassment complaints could be

retaliation. *(Howard v. Urban Investment Trust, Inc. et. al.)*

83. Plaintiff text his wife from work on Thursday, July 26, 2018 In response to injuries inflicted upon

him by Defendants on this day stating that "I think this may be FCA repay". (**See txt: EXHIBIT D,**

84. **Page 14)**

## COUNT IV VIOLATION OF THE RACE DISCRIMINATION in EMPLOYMENT ACT of 1967 AS AMENDED and TITLE VII of the CIVIL RIGHTS ACT OF 1964 as amended; HOSTILE WORK ENVIROMENT

1. On Monday, March 12, 2018 in a letter to FCA US LLC Labor Representative, Plaintiff challenged

FCA US LLC's disciplinary action taken against him citing racial stereotyping and racial bias as

motivation. (**See EXHIBIT B, Page 11**)

## COUNT V CIVIL CONSPIRACY, HOSTILE WORK ENVIRONMENT

The essential elements of a civil conspiracy are: (1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means. Admiral Ins Co v Columbia Casualty Ins Co,194 Mich App 300, 313; 486 NW2d 351 (1992). Defendants "were jointly engaged in tortious activity as a result of which the plaintiff was harmed." Abel v Eli Lilly & Co, 418 Mich 311, 338; 343 NW2d 164 (1984). A civil conspiracy claim is not actionable by itself. Instead, there must be a separate, actionable tort underlying the conspiracy. Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 257 Mich.App 365, 384; 2d 569 (2003) aff'd 472 Mich. 91 (2005).

2.  Defendants agents/employees colluded and conspired on a decision to ignore Plaintiff's complaint of co-worker Dominick Amond's harassment and hostile work environment, thereby; breaching duty of fair representation, discriminating against Plaintiff in violation of **EMPLOYMENT ACT of 1967 AS AMENDED and TITLE VII of the CIVIL RIGHTS ACT OF 1964 as amended,** creating a hostile work environment, intentionally inflicting upon Plaintiff emotional distress, and failing to properly respond to Plaintiff's complaint of hostile work environment.

3.  Defendants FCA US LLC and UAW are vicariously liable for tortious actions in this case at bar derived from the collusion and conspiracy of UAW Chief Union Steward Eddie Smith, UAW Union Alternate Chief Steward Keith Hall,  FCA US LLC Supervisor Jana Hines and other employees/agents of the defendants whose action or omissions contributed to Plaintiff's injuries because said violative actions were clearly done within the scope of their employment with Defendants .

4.  Ultimate decision of defendants not to properly pursue Plaintiff's complaints on Thursday, July 26, 2018 was not based on merits of said complaints. On the contrary, Defendant FCA US LLC's Supervisor said to Plaintiff that "No one should have to work like this" referring to the hostile work environment Plaintiff complained of in email to FCA US LLC. Also, in a meeting on Thursday, July 26 2018 with Supervisor Jana Hines, Defendant UAW's Alternate Chief Union Steward told Plaintiff that he agreed with Supervisor Jana Hines proposed discipline of co-worker Dominck Amond, which included immediate removal from area and sending him home for the balance of the shift.

5.  Plaintiff never suggested, recommended nor sought to impose any of the disciplinary actions against co-worker Dominick Amond proposed by or agreed upon by FCA US LLC and UAW officials, but they of their own volition and assessment determined such disciplinary measures including immediate removal from area and further discipline as saw fit by UAW

Labor Relations to be proper.

6. That, Defendants' agents and employees therefore willfully ignored Plaintiff's complaint of hostile work environment, having verbally conceded to the fact that co-worker Dominick Amond's harassment, coercion, and intimidation was indeed pervasive and impacted Plaintiff's work.

7. That, Defendants agents/employees cite the following in support of the decision they conspire upon to ignore Plaintiffs complaint: (1) " You're (Plaintiff) an OLD HEAD", (2) other UAW union members in the Paint Shop facing discipline may suffer from the precedence of disciplinary action taken against co-worker Dominick Amond, (3) Cynthia Johnson is the only FCA US LLC Labor Representative available at the time, and (4) Defendant UAW's Alternate Chief Union Steward will "handle" the matter himself personally.

8. That, FCA Supervisor Jana Hines and UAW Alternate Chief Steward on July 26, 2018 asserted to Plaintiff that co-worker Dominick Amond's conduct indeed interfered with his ability to do his work and contributed to a hostile work environment.

9. That, Defendants FCA US LLC and the UAW employees/agents thereafter conspired to violate the Plaintiff's personal rights and effectively supported co-worker Dominick Amond's formation of an unlawful combination or coercion of co-workers designed to harass, intimidate and penalize Plaintiff for complying with FCA management orders to him; orders which co-worker Dominick Amond opposed. (**See text messages: EXHIBIT D, Pages 3 and 4**)*Commonwealth v. Hunt* (1842); *Commonwealth v. Morrow* continued to refine this standard, stating that, "an agreement of two or more to the prejudice of the rights of others or of society" would be illegal.[20]Another line of cases, led by Justice John Gibson of the Supreme Court of Pennsylvania's decision in *Commonwealth v. Carlisle*, held that the motive of the combination, rather than simply its existence, was the key to illegality.[21] Gibson wrote, "Where the act is lawful for an individual, it can be the subject of a conspiracy, when done in concert, only where there is a direct intention that injury shall result from it."

## COUNT VI BREACH OF THE DUTY OF FAIR REPRESENTATION

The duty of fair representation is owed to all members, union and nonunion members alike, in the same bargaining unit. See, *Goolsby v Detroit*, 419 Mich 651, 661-65 (1984).

A union breaches the duty of fair representation when it refuses to process a grievance before assessing the merit of the grievance itself. See, *Ruggirello v Ford Motor Co*, 411 FSupp 758, 760 (EDMich, 1976). PERA imposes a duty of fair representation that is similar to that owed by unions that represent private-sector employees governed by the National Labor Relations Act (NLRA). "...PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation which is similar to the duty imposed by the NLRA on labor organizations representing private sector employees." *Demings v City of Ecorse*, 127 Mich App 608, 615–617 (1983).

(53 N.Y. Jur. 2nd Employment Relations §514) In order to establish a breach of the duty of fair representation, it is necessary to show that the union's conduct was arbitrary, discriminatory, or in bad faith. There must be a showing that the activity, or lack thereof, which formed the basis of the charges against the union was deliberately invidious, arbitrary, or founded in bad faith. There must be substantial evidence of fraud, deceitful action, or dishonest conduct, or evidence of discrimination that is intentional, severe and unrelated to legitimate union objectives.

10. Plaintiff incorporate the preceding paragraphs by reference.

11. The Defendant UAW Union breached the duty of fair representation when its' agents/employees, within the clear scope of their employment  discriminated against Plaintiff deciding that his rights would be violated to protect other UAW union members/co-workers of Plaintiff from discipline.

12. Defendant UAW is liable for damages and injuries to the Plaintiff because the union failed to pursue his complaint properly. (See *Steele v. Louisville & N.R.R.*, 323 U.S. 192 (1944)

13. Furthermore, Defendant UAW's Chief and Alternate Chief Stewards, Eddie Smith's, and Keith Hall's,  misconduct was intentional. (Compare Dober v. Roadway Express, Inc., 707 F.2d 292, 294 (7th Cir. 1983) (breach of duty requires "intentional misconduct" by union), with Robesky v. Qantas Empire Airways Ltd., 573 F.2d io82, io88-9o (9th Cir. 1978) (unintentional acts or omissions may constitute breach of union's duty). See generally 2 THE DEVELOPING LABOR LAW, supra note 30, at 1322-25 (describing various standards applied in courts of appeals).

14. On Thursday July 26, 2018,  after Plaintiff complained to Defendant UAW's Alternate Chief Union Steward Keith Hall of the harassing, hostile and threatening behavior co-worker Dominick Amond was directing at him; the Defendant UAW's Chief Union Steward (Eddie Smith), Alternate Chief Union Steward (Keith Hall), and Defendant FCA US LLC's supervisor devised a scheme that ultimately concluded that a prompt and appropriate action

22

to Plaintiff's complaint would not take place and that instead "Keith" would "handle"

Dominick Amond. **(See text message: EXHIBIT D, Page 12)**

## COUNT VII BREACH OF THE DUTY OF FAIR REPRESENTATION

**A union breaches the duty of fair representation when it refuses to process a grievance before assessing the merit of the grievance itself. See, Ruggirello v Ford Motor Co, 411 FSupp 758, 760 (EDMich, 1976).**

**PERA imposes a duty of fair representation that is similar to that owed by unions that represent private-sector employees governed by the National Labor Relations Act (NLRA). "...PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation which is similar to the duty imposed by the NLRA on labor organizations representing private sector employees." Demings v City of Ecorse, 127 Mich App 608, 615–617 (1983).**

**(53 N.Y. Jur. 2nd Employment Relations §514) In order to establish a breach of the duty of fair representation, it is necessary to show that the union's conduct was arbitrary, discriminatory, or in bad faith. There must be a showing that the activity, or lack thereof, which formed the basis of the charges against the union was deliberately invidious, arbitrary, or founded in bad faith. There must be substantial evidence of fraud, deceitful action, or dishonest conduct, or evidence of discrimination that is intentional, severe and unrelated to legitimate union objectives.**

15. Plaintiff incorporate the preceding paragraphs by reference.

16. Plaintiff made a request in writing to the UAW to file a grievance on his behalf to the UAW (Committeeman Michael Spencer) via email. **(See EXHIBIT B, Pages 2-18)**

17. No grievance was filed.

18. Defendant UAW is liable for damages to the Plaintiff in this case at bar because its wrongfully refusal to file grievances and by handling his complaint in an arbitrary and perfunctory manor, prejudicing Plaintiff. ( *See Bowen v. United State Postal Service*)

## COUNT VIII INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." Intentional infliction of emotional distress has occurred when a defendant intentionally or recklessly engages in extreme and outrageous conduct that causes the plaintiff to suffer severe emotional distress. *Walsh v Taylor,* 263 Mich App 618, 634; 689 NW2d 506 (2004). The outrageous conduct requirement is satisfied only by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and utterly intolerable in a civilized community." Liability arises, moreover, only "where the distress inflicted is so severe that no reasonable man could be expected to endure it." Id. (citation omitted) (quoting *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 608-09, 374 N.W.2d 905, 908-09 (1985)).

In *Daley v. Lacroix*, 384 Mich. 4, 179 N.W.2d 390 (1970) (en blanc) the Michigan Supreme ne *570 abolished the long-standing physical impact requirement for recovery based upon negligent infliction of emotional distress. See 384 Mich. at 9-12, 179 N.W.2d at 393-95. The court held that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock. Id. at 12-13, 179 N.W.2d at 395; see also *Maldonado v. National* Acme Co., 73 F.3d 642, 645-47 (6th Cir. 1996) (citing Daley and concluding that Michigan law recognizes "a claim for [emotional distress for] fearing for one's personal safety")

19. Plaintiff incorporate the preceding paragraphs by reference.

20. Plaintiff has suffered from severe emotional distress as a result of Defendants willful and intentional conspiracy to create a hostile work environment in which Plaintiff feared for his personal safety.

21. Plaintiff's privy, his wife, and their five minor children have been harmed also because they fear for Plaintiff's safety given the perfunctory manor in which defendants have handled Plaintiffs complaints of co-worker harassment and hostile work environment.

22. On Thursday, July 26, 2018 at approximately 5:00 PM, FCA supervisor Jana Hines assessed this matter involving the Plaintiff and his co-worker Dominick Amond and then concluded in a statement to Plaintiff that "No one should have to work like this". (**See EXHIBIT D, Page 12**)

23. On Thursday July 26, 2018, FCA supervisor Jana Hines then proceeded to collude and conspire with UAW Alternate Chief Steward Keith Hall, and UAW Chief Steward Eddie Smith in a scheme that would ensure that Plaintiff would in fact "work like this" under the obvious mental anguish and emotional distress of harassment, coercion and intimidation. (**See txt: EXHIBIT D, Pages 12 and 13**)

24. The Defendants reckless, outrageous, unprincipled, misleading and deceptive scheme executed on July 26, 2018 and July 27,2018 precluded Plaintiff's co-worker Dominick Amond from discipline, alienated FCA US LLC's Labor Relations Representatives and circumvented Plaintiff's rights to personally complain of him fearing for his safety due to co-workers increasingly intense campaign of harassment and threatening behavior towards him to FCA Labor Relations representatives, all after Plaintiff asked FCA US LLC supervisors that something be done about co-worker Dominick Amond's harassment through emails and otherwise. (**See Emails: EXHIBIT A**)

25. The Defendants FCA US LLC and the UAW scheme deceived and mislead Plaintiff to believe that while he continued to work on Thursday July 26, 2018 that the matter had been escalated to an FCA Labor Relations representative when in fact it had not been.

26. Plaintiff was told by FCA Supervisor Jana Hines, at the beginning of the shift, around 5:00 PM July 26, 2018, that within an hour FCA Labor Representatives would be engaged and that his co-worker Dominick Amond would be immediately removed from the area.

27. Plaintiff was forced by FCA and the UAW to continue to work with co-worker Dominick Amond who continued to demonstrate physical and verbal hostility towards Plaintiff for the remainder of the shift on July 26, 2018.

28. Plaintiff was not informed by FCA or the UAW that hostile co-worker Dominick Amond would not be removed from area or disciplined until approximately 1:00 am July 27,2018, nearly 8 1/2 hours after the shift began and nearly 8 hours after FCA Supervisor Jana Hines told Plaintiff that co-worker Dominick Amond would be immediately removed from the area and disciplined for what she saw his contribution to an intolerable work environment.

29. UAW Alternate Chief Steward Keith Hall, being fully apprised of the hostility

concerns of the Plaintiff, was reckless and outrageous in directing Plaintiff to retrieve irate co-worker Dominick Amond on his behalf, putting Plaintiff in an emotionally distressing and unsafe situation.

30. On July 28,2018 at 1:42 PM, FCA Supervisor Jana Hines acknowledged in text message (**EXHIBIT D, Page 12**) to Plaintiff, that she did indeed tell Plaintiff that "No one should have to work like that" effectively conceding to the fact that Defendants FCA US LLC. and the UAW fully intended that Plaintiff should work under intolerable and unreasonable conditions of a hostile work environment.

31. In reference to the hostile work conditions and the harassment Plaintiff has been intentionally subjected to: Defendant FCA US LLC.'s supervisor wrote a text message On July 28, 2018 at 1:46 PM, conceding that the circumstances under which the Plaintiff was forced to work is stressful, stating "Its stressful. But I hope you are ok,..."(see **EXHIBIT D, Page 12**)

32. No, Plaintiff is not "ok". Plaintiff feared for his personal safety and has suffered from extreme emotional distress and mental anguish as a result of the intentional infliction of emotional distress inflicted upon him by the Defendants.

> In *Daley v. Lacroix*, 384 Mich. 4, 179 N.W.2d 390 (1970) (en blanc) the Michigan Supremene *570 abolished the long-standing physical impact requirement for recovery based upon negligent infliction of emotional distress. See 384 Mich. at 9-12, 179 N.W.2d at 393-95. The court held that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock. Id. at 12-13, 179 N.W.2d at 395; see also *Maldonado v. National* Acme Co., 73 F.3d 642, 645-47 (6th Cir. 1996) (citing Daley and concluding that Michigan law recognizes "a claim for [emotional distress for] fearing for one's personal safety")

33. It seems that Defendant FCA US LLC supervisors and Defendant UAW representatives genuinely do not know how to conduct themselves in any other way, therefore Plaintiff is reasonably not inclined to continue to expose himself to risk of more

26

injury given Defendants' fecklessness and befuddled approach to ensuring safety in the workplace.

34. There is no FCA US LLC. policy allowing for UAW Union Stewards to "handle", take action against or otherwise discipline workers accused of harassment, coercion, intimidation and threatening behavior. (**See Text: EXHIBIT D, Page 12**)

35. However, Defendant FCA US LLC.'s supervisor Jana Hines alluded in text message dated July 28, 2018, 1:43 PM to the unprincipled agreement between her and UAW Alternate Chief Steward Keith Hall to allow the UAW Alternate Keith Hall to "handle" Dominick Amond. (see **EXHIBIT D, Page 12**)

36. Two days after Plaintiff sent Defendant FCA US LLC.'s supervisors Jana Hines, and Julian Brunson an email (**EXHIBIT A, Page 2**) asking for something to be done about the harassment of co-worker Dominick Amond and after Plaintiff is already on a medical leave of absence, Defendant FCA US LLC.'s supervisor proposes a meeting with Defendant FCA US LLC.'s labor representative.

37. In text message to Plaintiff from Defendant FCA US LLC.'s Supervisor Jana Hines, on Saturday July 28, 2018 at 1:53 PM, nearly 45 hours after Defendant FCA US LLC's Supervisor Jana Hines assured Plaintiff that the matter of his co-worker Dominick Amond's harassment would be escalated to Defendant FCA US LLC's Labor Relations department in 1 hours time, she ask plaintiff if he would like to meet with Defendant FCA US LLC's Labor Relations personnel. Note the aforementioned text message comes to Plaintiff 50 hours after he first sent email to FCA US LLC to complain of co-worker's harassment at 11:48 AM on July 26, 2018 (**See EXHIBIT A, Page 2, and EXHIBIT D, Page 12**)

38. Defendant FCA US LLC.'s Supervisor mislead Plaintiff on Thursday, July 26, 2018 to believe that the matter of his co-worker Dominick Amond's harassment would be promptly

escalated to Defendant FCA US LLC's Labor Relations Department and Plaintiff did not realize that no such effort had been made until about 1:00 AM Friday July 27, 2018, nearly 8 1/2 hours into the shift.

39. At about 1:00 am Friday July 27, 2018, Plaintiff is informed by Defendant UAW's Alternate Chief Steward Keith Hall that a plan involving Defendant FCA US LLC.'s supervisor Jana Hines, and Defendant UAW's Chief Steward Eddie Smith circumvented the escalation of the matter of co-worker Dominick Amond's harassment.

40. Defendant FCA US. LLC's supervisor Jana Hines alludes to this plan in her text message to Plaintiff stating that the agreement was for "Keith" to "Handle" Plaintiff's co-worker Dominick Amond.(see **EXHIBIT D, Page 12**)

41. Defendants agents/employees therefore knowingly, willfully, and intentionally ignored Plaintiffs' complaint of a hostile work environment and subjected him to a hostile work environment that they said was pervasive and impacted Plaintiffs' work.

### COUNT IX NEGLIGENT RETENTION OF AN UNFIT EMPLOYEE

"To sustain [a claim for negligent hiring/retention], a plaintiff must produce evidence 'of appropriate standard for hiring, retaining, or supervising' the relevant class of employee..., as well as evidence demonstrating that the employer knew or should have known of the employee's propensity to engage in the challenged conduct.... In addition, such claims are subject to the overarching principle that, under Michigan law, an employer cannot be held liable for intentional torts committed by an employee outside the scope of his employment." Verran v. United States, 305 F. Supp. 2d 765, 771 (E.D. Mich. 2004).

The tort claims of negligent hiring and negligent retention are rooted in common law and are generally permitted where an employee's tortious conduct cannot result in any violation under the theory of respondeat superior. A claim for negligent hiring "is based on the principle that an employer is liable for the harm resulting from its employee's negligent acts 'in the employment of improper persons or instrumentalities in work involving risk of harm to other.'" Labor and Employment Law, Ch. 270, § 270.03.

42. Plaintiff's co-worker Dominick Amond had been accused of making criminal threats to co-

28

worker Kyanne Gaddis. Kyanne Gaddis repeatedly told FCA US LLC Supervisors and security personnel that based on statements Dominick Amond made to here, she "feared for her life". This is evidence demonstrating that the employer knew or should have known of the employee's propensity to engage in the challenged conduct.

43. Approximately 4 Months latter FCA US LLC's supervisor Jana Hines decides to recklessly retain Dominick Amond as an employee after Plaintiff complained in writing of an hostile work environment and after she told Plaintiff in no uncertain terms, given the hostile work environment that Plaintiff was being subjected to by co-worker Dominick Amond, "no one should have to work like this". (See Text Messages: EXHIBIT D, page 13)

44. Therefore supervisor Jana Hines negligent retention of this unfit employee to the injury of Plaintiff is clearly intentional and was certainly within the scope of her employment with Defendant FCA US LLC. Further, Claim of negligent retention is therefore not preempted by Michigan Workers' Disability Compensation Act, MCL 418.131. (See *Downer v. Detroit Receiving Hosp.*, 191 Mich. App.) (See Text Messages: EXHIBIT D, page 13)

## COUNT X LIBEL

Michigan law distinguishes between defamation per se whereby a defamatory statement is actionable "irrespective of special harm" and defamation per quod, which involves "the existence of special harm caused by publication . . . ." Frohriep v Flanagan (On Remand), 278 -3- Mich App 665, 680; 754 NW2d 912 (2008). Words are defamatory per se if they, "by themselves, and as such, without reference to extrinsic proof,injure the reputation
of the person to whom they are applied." Black's Law Dictionary (6th ed, 1990), p 417. "Whether nominal or substantial, where there is defamation per se, the presumption of general damages is well settled." Burden v Elias Bros Big Boy Restaurants, 240 Mich App 723, 728; 613 NW2d 378 (2000), lv den 463 Mich 989 (2001).

1. Plaintiff incorporate the preceding paragraphs by reference.

2. With no specificity or reasonableness, FCA US LLC's Labor Relations Representative Cynthia Johnson falsely accused Plaintiff in a written statement of making criminal threats

29

(See EXHIBIT B).

3. Upon Plaintiff's request for a retraction of the false statement in good faith, FCA US LLC's Corporate Staff Lead Gerard Perez rejected Plaintiffs' proposed retraction and supported Cynthia Johnson's slanderous statements in email. (See EXHIBIT B)

4. Further, breeching his duty to plaintiff, UAW Union Committeeman Michael Spencer refused to file a grievance on Plaintiffs' behalf in this matter when Plaintiff so requested. (See emails: EXHIBIT B)

5. Here Defendants FCA US LLC and UAW seem to strain at a gnat but swallow a horse given its perfunctory response to Plaintiffs' complaint of harassment and a hostile work environment.

## COUNT XI VICARIOUS LIABILITY

6. Plaintiff incorporate the preceding paragraphs by reference.

7. Both Defendants' agents and employees conspired to abrogate its responsibility and duty to Plaintiff within the clear scope of their employment with said Defendants causing Plaintiff injury.

8. The intentional and tortious actions, omissions and atrocious conduct of Defendants' agents and employees, was clearly done within the scope of their employment and therefore FCA US LLC and UAW are vicariously liable for the Plaintiff's damages and injuries. (See *Linebaugh v. Sheraton Mich. Corp.*, 198 Mich. App. 335, 343, 497 N.W.2d 585, 589 (1993)

## RELIEF REQUESTED

9. WHEREFORE, Plaintiff prays for damages in an amount to be determined at trial, together with interest, cost of suit, attorney fees, and all such other relief the court deems just and proper which include:

a. Declare that the aforementioned actions and practices of the Defendants constitute unlawful employment practices in violation of the Age Discrimination in Employment Act of 1967 as amended and Title VII of the Civil Rights Act of 1964 as amended;

b. Declare that the aforementioned Defendants actions and practices constitute a civil conspiracy;

c. Declare that the Defendants FCA US LLC. and UAW intentionally inflicted emotional distress upon the Plaintiff;

d. Declare that the UAW actions, omissions, and practices constitute a breach of the duty of fair representation;

e. Award Plaintiff loss of wages, overtime, the value of employment to age 100, cost of benefits, back pay and front pay;

f. value of all insurance benefits for the Plaintiff, his dependent spouse and their 5 dependant minor children;

g. Award Plaintiff compensatory damages;

h. Award Plaintiff punitive damages;

i. Award Plaintiff exemplary damages;

j. Award Plaintiff reasonable attorney fees, cost, and interest;

k. Award Plaintiff equitable relief including but not limited to an injunction directing defendant to cease their discriminatory conduct and practices;

l. Award plaintiff relief available under ELCRA, and Award Plaintiff such other relief as this court deems just and proper

## DEMAND FOR JURY TRIAL

10. Plaintiff hereby demands a trial by jury on all issues so triable.

Date: September 27, 2018                           Respectfully Submitted,

John L. Roseman, Sr.
24823 Cobblestone Court
Farmington Hills, MI 48336
313-815-0119
johnlroseman@aol.com

31

# EXHIBIT   A

2

7/30/2018                                                        FYI. Fw: Hostile Work Enviorment

From: johniroseman <johniroseman@aol.com>
    To: devetrialroseman <devetrialroseman@aol.com>
Subject: FYI. Fw: Hostile Work Enviorment
    Date: Thu, Jul 26, 2018 5:49 pm

---

*Sent from my Verizon LG Smartphone*

------ Original message------
From: Brunson Julian (FCA)
Date: Thu, Jul 26, 2018 3:40 PM
To: johniroseman@aol.com:Hines Jana (FCA);
Cc:
Subject:RE: Hostile Work Enviorment

I need to be filled in.  Help me understand the situation.

From: johniroseman@aol.com >
Sent: Thursday, July 26, 2018 11:48 AM
To: Hines Jana (FCA) >: Brunson Julian (FCA) >
Subject: Hostile Work Enviorment

Jana,



Please view attached screenshots of text messages.

I am asking that someone please address the inflammatory rhetoric being directed towards me from team member
Dominick. This rhetoric is being disseminated via text messages to members of team 11 including Team Leader and
Alternate Chief Stewart Keith Hall.

Thank you.

Regards,

John L. Roseman

POOR QUALITY ORIGINAL

3

**From:** johnlroseman <johnlroseman@aol.com>
**To:** john.roseman <john.roseman@fcagroup.com>
**Subject:** Fwd: Hostile Work Enviorment
**Date:** Thu, Jul 26, 2018 11:49 am
**Attachments:** Screenshot_2018-07-26-11-09-14 Hostile 002.png (416K), Screenshot_2018-07-26-11-34-51 Hostile 001.png (459K)

-----Original Message-----
From: johnlroseman <johnlroseman@aol.com>
To: jana.hines <jana.hines@fcagroup.com>; julian.brunson <julian.brunson@fcagroup.com>
Sent: Thu, Jul 26, 2018 11:48 am
Subject: Hostile Work Enviorment

Jana,


Please view attached screenshots of text messages.

I am asking that someone please address the inflammatory rhetoric being directed towards me from team member Dominick. This rhetoric is being disseminated via text messages to members of team 11 including Team Leader and Alternate Chief Stewart Keith Hall.

Thank you.

Regards,

John L. Roseman


**2 Attached Images**



7/30/2018



5

7/30/2018                                                           Hostile Work Enviorment

**From:** johnlroseman <johnlroseman@aol.com>
  **To:** jana.hines <jana.hines@fcagroup.com>; julian.brunson <julian.brunson@fcagroup.com>
**Subject:** Hostile Work Enviorment
  **Date:** Thu, Jul 26, 2018 11:48 am
**Attachments:** Screenshot_2018-07-26-11-09-14 Hostile 002.png (416K), Screenshot_2018-07-26-11-34-51 Hostile 001.png (459K)

Jana,


Please view attached screenshots of text messages.

I am asking that someone please address the inflammatory rhetoric being directed towards me from team member Dominick.
This rhetoric is being disseminated via text messages to members of team 11 including Team Leader and Alternate Chief
Stewart Keith Hall.

Thank you.

Regards,

John L. Roseman


2 Attached Images



6

7

7/30/2018



# EXHIBIT   B

2

8/5/2018                                                    FW: Member Statement

**From:** Roseman John (FCA)
**Sent:** Friday, March 09, 2018 6:19 PM
**To:** Spencer Michael 2 (FCA) <michael.s.spencer@fcagroup.com>
**Subject:** FW: Member Statement

Please find attached member statement and visitors log.

-John Roseman

3

8/5/2018                                                    FW: Member Statement

**From:** Roseman John (FCA) <john.roseman@fcagroup.com>
**To:** johnIroseman <johnIroseman@aol.com>
**Subject:** FW: Member Statement
**Date:** Sat, Mar 10, 2018 10:30 pm
**Attachments:** fca grievance 001.jpg (305K), fca grievance 002.jpg (707K)

---

**From:** Roseman John (FCA)
**Sent:** Friday, March 09, 2018 6:19 PM
**To:** Spencer Michael 2 (FCA) <michael.s.spencer@fcagroup.com>
**Subject:** FW: Member Statement

Please find attached member statement and visitors log.

~John Roseman

2 Attached Images

POOR QUALITY ORIGINAL

4

8/5/2018

FW: Member Statement





## Sterling Heights Assembly Plant

### Investigation Report- Member Statement

Employee Name: John Roseman   CID: 1041863   Date: March 8, 2018

It is 8:00 P.M. on Thursday, March 8, 2018 and I am sitting in an FCA administrative office waiting on FCA labor representative Cynthia Johnson. I have been detained by FCA human resources, and security, and labor relations since 4:20 P.M. without access to water or a restroom.

Employee Signature

Sterling Heights Assembly Plant | 3811 Van Dyke Road | Sterling Heights, MI 48382

6



7

8/5/2018                                                                        Grievance

**From:** johnlroseman <johnlroseman@aol.com>
    **To:** michael.s.spencer <michael.s.spencer@fcagroup.com>; john.roseman <john.roseman@fcagroup.com>; rsrosem
        <rsrosem@yahoo.com>
**Subject:** Grievance
    **Date:** Sun, Mar 11, 2018 1:48 pm
**Attachments:** Greivance_Request_001.docx (693K)

Mr. Michael Spencer,

Please find/see attached. If you have any questions, please advise. Thank you.

Regards,

John Roseman

8

Sunday, March 11, 2018

## Factual Background

1. John Roseman posted flyers/printed material in a campaign to run for the position of UAW UNION STEWARD, District 21 of Local 1700.
2. No flyer, "bulletin", or any other printed material Employee John Roseman (1041863) posted in Sterling Heights Assembly Plant a FCA facilaty contained the declaration or phrase or declaration "new sheriff in town" alleged in the verbal warning.
3. The signatures of FCA and UAW officials on this document constitute fraud and is a material misrepresentation.
4. The signature of the Union Official represents a breech of duty and a failure to represent Mr. John Roseman an FCA empoyee of 20 years fairly.
5. Mr. John Roseman rights have been violated.
6. It is reasonble to duduce from the context of this FCA Displinary Action that the motivation is and was political.
7. Mr. John Roseman feels he was being harrassed, cooerced and intimidated by FCA and UAW officials to accept and sign off on what he believed to be unjust Disciplinary Action.
8. The "VIOLATION TYPE" that FCA alleges is a false acusation. No ACTIONS or WORDS in any printed material, bulletin or flyer posted or produced by John Roseman can REASONBLY be deduced to being : THREATENING, INTIMIDATING, COERCING, or HARASSING
9. It is reckless, extreme and outragous for FCA and UAW officials to collude in this damaging act of defamation and material misrepresentation.

## Relief Sought

Mr. John Roseman request that his UAW steward grieves the Disciplinary Action (below/next page).

A public appology from FCA and UAW officials. Disciplinary Action removed from Mr. John Roseman's work record.

John L. Roseman

9

Sunday, March 11, 2018



10

**From:** johnlroseman <johnlroseman@aol.com>
**To:** Cynthia.Johnson <Cynthia.Johnson@fcagroup.com>; john.roseman <john.roseman@fcagroup.com>; michael.s.spencer <michael.s.spencer@fcagroup.com>
**Date:** Mon, Mar 12, 2018 2:22 am
**Attachments:** Letter_FCA_LR_CynthiaJohnson_001.pdf (378K)

Hello Cynthia Johnson,

Please see attached. If you have any questions, please advise.

Kind Regards,

John Roseman

11

Monday, March 12, 2018

It seemed that you were listening and wanted to be fair in investigating some "anonymous" allegation made against me that lead to a disciplinary action that essentially characterizes me as public enemy number 1. The determination made in the written warning alludes to me as being one who is/was intentionally threatening with a firearm being in the nexus. For good reasons, this profile is one of the most despised in America and the World for that matter. I am not that person.

Peoples fears are not always rational or in this case reasonable. Some people fear zombies and I don't believe they exist. Personal bias, stereotyping, or politics cannot reasonably be dismissed as motivators in this case.

We agreed that I should remove all offending bulletins and I have. You may offer my most sincere apologies to the "anonymous" person or persons finding the bulletin unagreeable. We all want to work in as safe and respectable environment as possible and no effort in that regard is futile.

I apologize for any for any problems this may have caused, and may we all find something of redeemable value from the whole ordeal.

I am requesting that Disciplinary Action is removed from my record, as it certainly mischaracterizes a man who is totally innocent of what it proports. It is going too far to say that I was "THREATENING, INTIMDATING, COERCING, HARASSING". In no way did I make or intend to make any criminal, violent, or malicious proposition verbally, or in writing, or in the printed bulletin of subject.

People have varying reaction to all advertisements. For example, Dr. Martin Luther Kings estate found it agreeable that he (his voice) should be in a FCA 2018 SUPERBOWL commercial, but many others protest the notion. When putting together an add or campaign bulletin, one cannot predict what opinions or biases, reasonable or unreasonable will ensue.

Thank you for your time.

Best Regards,

John L. Roseman

12

8/5/2018                                                              FW: Member Statement

**From:** Roseman John (FCA) <john.roseman@fcagroup.com>
   **To:** johniroseman <johniroseman@aol.com>
**Subject:** FW: Member Statement
   **Date:** Sat, Mar 10, 2018 10:29 pm

---

**From:** Spencer Michael 2 (FCA)
**Sent:** Saturday, March 10, 2018 11:58 AM
**To:** Roseman John (FCA) <john.roseman@fcagroup.com>
**Subject:** RE: Member Statement

You were detained....Did you ask to go to the restroom or to use the water fountain?....What time did you ask for Union Representation?

**Mike Spencer**
**UAW – Shop Committeeman**
**(313)717-1323**



**From:** Roseman John (FCA)
**Sent:** Friday, March 09, 2018 6:19 PM
**To:** Spencer Michael 2 (FCA) <michael.s.spencer@fcagroup.com>
**Subject:** FW: Member Statement

Please find attached member statement and visitors log.

~John Roseman

13

**From:** Roseman John (FCA) <john.roseman@fcagroup.com>
    **To:** johnlroseman <johnlroseman@aol.com>
**Subject:** FW: Member Statement
    **Date:** Sat, Mar 10, 2018 10:30 pm

---

**From:** Roseman John (FCA)
**Sent:** Saturday, March 10, 2018 10:29 PM
**To:** Spencer Michael 2 (FCA) <michael.s.spencer@fcagroup.com>
**Subject:** RE: Member Statement

Michael Spencer,

Also, please obtain from FCA Labor Relations / HR representative(s) a copy of the flyer for which I was given a written warning. Please scan it and send me a copy to the following email addresses for my records: johnlroseman@aol.com john.roseman@fcagroup.com.

Thank you kindly Sir.

Best Regards,

John Roseman

**From:** Spencer Michael 2 (FCA)
**Sent:** Saturday, March 10, 2018 11:58 AM
**To:** Roseman John (FCA) <john.roseman@fcagroup.com>
**Subject:** RE: Member Statement

You were detained.....Did you ask to go to the restroom or to use the water fountain?....What time did you ask for Union Representation?

**Mike Spencer**
**UAW – Shop Committeeman**
**(313)717-1323**



**From:** Roseman John (FCA)
**Sent:** Friday, March 09, 2018 6:19 PM
**To:** Spencer Michael 2 (FCA) <michael.s.spencer@fcagroup.com>
**Subject:** FW: Member Statement

Please find attached member statement and visitors log.

14

~John Roseman

8/5/2018                                                            FW: Member Statement

From: Roseman John (FCA) <john.roseman@fcagroup.com>
To: johnlroseman <johnlroseman@aol.com>
Subject: FW: Member Statement
Date: Sat, Mar 10, 2018 10:30 pm

From: Roseman John (FCA)
Sent: Saturday, March 10, 2018 8:03 PM
To: Spencer Michael 2 (FCA) <michael.s.spencer@fcagroup.com>
Subject: RE: Member Statement

Hello Michael Spencer,

Thank you for following up with me on this matter.

I never asked for Union Representation because I had no knowledge of why my badge did not work or why I were asked by FCA HR representative to sit and wait in Lobby for a Labor representative to "talk" with me.

I waited in the lobby for approximately 4 hours before being summoned by a FCA HR/Labor representative. I was constructively detained because I could not enter the Plant (SHAP), and if I left out of the entrance door, I would have been one locked out and two "AWOL" or it could be said that I left my job without being released to go home, to the restroom, etc.

By the time I was summoned to an office by FCA HR/Labor representative, everyone including the Security Guard at the desk had left. I was in the lobby alone.

I hope this helps clarify the situation. If you have more questions, let me know. Thank you.

-John Roseman

From: Spencer Michael 2 (FCA)
Sent: Saturday, March 10, 2018 11:58 AM
To: Roseman John (FCA) <john.roseman@fcagroup.com>
Subject: RE: Member Statement

You were detained....Did you ask to go to the restroom or to use the water fountain?....What time did you ask for Union Representation?

**Mike Spencer**
**UAW – Shop Committeeman**
**(313)717-1323**



16

**From:** johnlroseman <johnlroseman@aol.com>
**To:** michael.s.spencer <michael.s.spencer@fcagroup.com>; mike.keegan <mike.keegan@fcagroup.com>
**Subject:** Grievance
**Date:** Sat, Mar 17, 2018 1:35 am

Dear UAW Committeeman Michael S. Spencer,

You proposed a meeting in an email message to me. A meeting has not been forthcoming.

Please advise me of the status of the grievance I proposed against FCA Labor representative Cynthia Johnson.

Cynthia Johnson was hostile towards me. I was threatened and bullied by FCA Labor representatives when they tried to coerce me into signing a disciplinary action that represented falsities, lies and slanderous defaming accusations.

The false allegations in the disciplinary action written up by FCA labor representative Cynthia Johnson are damaging to my name. My name has commercial value: I am a published author, and a licensed professional who does business in his own name. FCA labor representative Cynthia Johnson published and disseminated false, defaming representations against me.

I am seeking an injunction of further infringement, a public apology, and for my record to be expunged of the falsities, and the disciplinary action.

In a "Knee jerk" reaction, without proper analysis, and due process, FCA labor representative Cynthia Johnson erroneously jumped to conclusions and violated my rights.

Your assistance in resolving this matter is greatly appreciated. Thank you.

Fraternally,

John Roseman

17

8/5/2018                                                    Re: SHAP

FCA is in receipt of your email to Mike Keegan, dated March 16, 2018. The incident involving the posting of a flyer at the Sterling Heights Assembly Plant was referred to me for review and response.

After a thorough review of your concern as articulated in the above referenced email, the Company has determined that this matter was properly handled and resolved.

In the future, please refer to the Local Human Resources office before posting information in the plant. This will ensure compliance to the Policy, procedures and rules that govern such postings.

In you have further concerns, please consult with your UAW Representatives for proper remediation under the 2015 Collective Bargaining Agreement.

Regards,


Gerard Perez,
Gerard Perez, Labor Relations Corporate Staff Lead



FIAT CHRYSLER AUTOMOBILES

18

8/5/2018                                                          Re: SHAP

From: johnlroseman <johnlroseman@aol.com>
    To: Perez Gerard (FCA) <gerard.perez@fcagroup.com>; eddie.smith <eddie.smith@fcagroup.com>; michael.s.spencer <michael.s.spencer@fcagroup.com>
Subject: Re: SHAP
    Date: Sun, Mar 25, 2018 6:25 pm

Dear Labor Relations Corporate Staff Lead Gerard Perez,

Thank you for your response and attending to this matter.

As your response is not specific in some regards, I would just like to be clear.

Since you say that this matter was properly handled and resolved, you represent on behalf of FCA that:

1. It is appropriate for FCA to construct a false arrest of sorts, holding one of its employees for nearly 4 hours without offering him a break or access to a restroom.

2. FCA labor representatives have immunity and are not beholden to accuracy in reporting material facts in written disciplinary actions.

3. Labor representatives were right to restate what was said in the bulletin in their own words, putting an aggressive and dramatic spin on what the (bulletin) political ad actually said.

4. Labor representative Cynthia Johnson suggested that she was judging me in the context of recent news or "what's going on in the World today", so FCA supports stereotyping in labor disciplinary actions. Witnessed by UAW Chief Steward Eddie Smith.

5. FCA Labor representative threatened that if I didn't sign the disciplinary written notice containing falsities that something worst could be done to me. So FCA labor representatives have immunity with regards to threats, coercion, and intimidation. This was witnessed by UAW Chief Steward Mike Caldwell.

So, for the sake of the press, NLRB, judges, lawyers, Unites States EEOC or whomever else may consider this matter. You may affirm the above to be true.

Thank you.

Respectfully,

John Roseman

*Sent from my Verizon LG Smartphone*

------ Original message------
From: Perez Gerard (FCA)
Date: Wed, Mar 21, 2018 2:39 PM
To: johnlroseman@aol.com;
Cc:
Subject:SHAP

March 21, 2018

Mr. John Roseman
johnlroseman@aol.com

Mr. Roseman,

# EXHIBIT  C

2

# POWERS CHAPMAN

ATTORNEYS AND COUNSELORS
PROFESSIONAL CORPORATION

3001 WEST BIG BEAVER ROAD, SUITE 704
TROY, MICHIGAN 48084

(800) 231-1466
(248) 816-8100
FAX (248) 663-2474

December 1, 2016

FCA
Attn: Human Resources
1000 Chrysler Drive
Auburn Hills, MI 48326

Re: John Roseman
    Our File No. 815388

Dear Sir or Madam:

This is written on behalf of Mr. John Roseman, a current employee of FCA. Mr. Roseman contacted this law firm concerning the continued harassment he has been subjected to by his co-worker, Darlene Ark. Ms. Ark has repeatedly harassed Mr. Roseman and made inappropriate comments, including telling other employees that he needs to "get some balls."

Mr. Roseman has made several complaints regarding Ms. Ark's behavior and the hostile work environment she is creating. However, FCA has done nothing to remedy the situation and he has only been subjected to further harassment and retaliation for his complaints.

Ms. Ark is not entitled to have greater protection in the workplace than Mr. Roseman. Indeed, FCA owes an obligation to Mr. Roseman to ensure that he is able to work in an environment free from the harassing and violent behavior displayed by Ms. Ark. If this matter is not investigated and resolved immediately, further legal action will proceed. Thank you.

Sincerely,
POWERS CHAPMAN

Sandra Hanshaw Burink
Attorney at Law

SHB/omo
Cc: John Roseman

3

7/30/2018                                                         Fwd: Herber Wright (FD)

From: johnlroseman <johnlroseman@aol.com>
   To: john.roseman <john.roseman@fcagroup.com>
Subject: Fwd: Herber Wright (FD)
   Date: Sat, Nov 5, 2016 2:49 pm

------Original Message------
From: johnlroseman <johnlroseman@aol.com>
To: john.roseman <john.roseman@fcagroup.com>
Sent: Sat, Nov 5, 2016 2:42 pm
Subject: Herber Wright

Herbert Wright,

After alerting you, Kalu Jones (UAW Rep), and Brian the human resource representative of what I felt was a hostile situation that involved Darlene Ark a team member on the team for which I am a team leader, you insisted at the threat of not paying me for refusing work that I must return to my post as Team Leader. I repeatedly expressed my anxieties about doing so, but returned because I did not want to risk discharge or discipline.

Due to the emotional distress of Darlene Ark's harassment and the inaction of FCA I am not well rested today. I would like you to tell me if you are still requiring me to return to my post today as Team Leader given the hostile verbal attack and confrontation that even you witnessed last night where Darlene Ark riddled me with verbal attacks including lewd references to my manhood and genitals. I have not been informed of any countermeasure put in place to insure me that Darlene Ark is not in my work area and that I do not risk being attacked by her today.

Please Advise.


Regards,

John Roseman

4

7/30/2018                                                                                    Fwd:

From: johnlroseman <johnlroseman@aol.com>
    To: s.laurenhaggerty <s.laurenhaggerty@gmail.com>
Subject: Fwd:
    Date: Sun, Nov 6, 2016 8:53 am

-----Original Message-----
From: johnlroseman <johnlroseman@aol.com>
To: Herbert.wright <Herbert.wright@fcagroup.com>; kalu.jones <kalu.jones@fcagroup.com>
Sent: Sun, Nov 6, 2016 8:50 am

Kalu Jones,

Yesterday, you told me in a no uncertain terms that Darlene Ark would be back to work in 31 days and that this would be sufficient rehabilitation for her. With all due respect Sir., I disagree. I don't think FCA can afford to bring her back. Your obligation to represent her not withstanding, I think you fail to see the gravity of her behavior patterns in the broader context of what is acceptable workplace conduct.

Considering the relatively swift and decisive response of HR representative Brian that materialized after I were finally able to meet with you and him Saturday morning; I am suspicious of what may have happened when I complained in writing nearly a year ago of similar hostile behavior Darlene Ark directed at me because no one from FCA even followed up with me at all. This was such a serious and urgent matter that I made multiple copies of the "Member Statement", and even mailed a copy back to myself, certified US mail. Why does there seem to be a conspiracy to protect Darlene Ark at my expense? Why did FCA Labor Relations department not follow up with me on the first complaint?

I and others witnessed her intentionally destroy company property when she did not get her way fast enough. She wanted a fan in the footprint of her operation repositioned, when tradesmen did not respond fast enough, she intentional slammed the door of a truck against that fan with such force it sounded like a small caliber firearm discharging. Since I have been her team leader, she has regularly staged schemes to sabotage and undermine  production.

 Friday night, she intentionally missed an operation. Supervisor Herb Wright became aware of it, demanded over the radio that I come to see the missed operation. Herb Wright then handed me a tool and demanded that I complete the operation. He then told me that he expects this of me from now on: that is to complete operations that she refuses to do. She was not written up or disciplined in any manor for the missed operation. She did the same thing the night before (Thursday), and Herb Wright called via radio to witness it, conceded that he understood what she was doing, and the discouraged me from saying anything to her, and then escorted me away. Likewise, Herb Wright, on Thursday did not write her up or discipline Darlene for what he conceded was a missed operation. Herb Wright advises me that I'm a "LEADER" and I should be willing to tolerate this behavior effectively corroborating FCA into a culture of workplace hostility and harassment. On Friday night / Saturday morning after Darlene Ark launched a verbal assault at me in the presence of Supervisor Herb Wright and it was determined that she missed the operation, Herb Wright latter threaten me with disciple in your presence if I did not return to my post as Team Leader when I had decided the hostility was too much and that I wanted to meet with an HR representative. How has she evaded discipline so at my expense?

Wednesday night of last week, Team Leader Mike on the polish deck radios me and says: "Darlene is down here". She has apparently left her job and has gone to another zone to harass others about doing there job.

Perhaps you fail to perceive the gravity of Darlene Arks behavior; it is in no wise benign or relenting. You may be well served by extending the investigation further because I not the only one she antagonizes and bullies. I personally witnessed her go to another operator on our team's work station and engage a hostile conflict with yelling, screaming, and verbal assaults. The operator, (Olga Alore) told me that she was struck in this altercation. I only gained a visual of the altercation after I heard the yelling and verbal assault being hurled.

Sincerely Yours,

John Roseman

5

7/30/2018                                                                          Fwd: 815388

**From:** johniroseman <johniroseman@aol.com>
 **To:** brian.kauflin <brian.kauflin@fcagroup.com>; kalu.jones <kalu.jones@fcagroup.com>
**Subject:** Fwd: 815388
 **Date:** Fri, Nov 25, 2016 8:50 am

---

**Member Statement / Statement of Grievance**

John Roseman is seeking relief and remedy without retaliation. John Roseman applied for and accepted the Team Leader position he now holds as a welcomed relief from direct production work he had been doing at Warren Truck Assembly Plant for the 18 years prior. The position allowed him to advance in new skill sets and earn $1.00 per hour more. The less physical nature of the Team Leader position also encouraged John to accept more overtime than he would otherwise work because he has flat feet and a number of injuries that discourage him from working overtime if it must be done on the production line exclusively without the breaks and inherent relief from direct production work the Team Leader Position affords him.

On November 05, 2016. In front of Supervisor Herb Wright, and several other witnesses. Darlene Ark exploded in a rant and verbal assault of John Roseman, saying that he " needs to get some balls". John Roseman has been enduring nearly a year of consistent harassment and verbal assaults from Darlene Ark dating back to a complaint by him submitted to the UAW representative about her telling others of her intent to harm him, intentionally sabotaging production by not alerting anyone that she was out of stock, intimidating others not to make the stock out alert, and then exploding in a rant and verbal confrontation with him in front of former supervisor Jeff Kennedy. In this instance, Jeff Kennedy seemed to appreciate a intention on Darlene's part to undermine production and have John Roseman suffer consequences. But, he said, "Tom Thorton (Business Unit Leader) says he wants you written up for this".

Darlene Ark has pushed for impossible standards to be imposed upon John Roseman as a Team Leader. Namely, she has intimidated other team members on the reprocess line to not turn the line off for breaks. On the other two shifts, the reprocess operators themselves start and stop the line for breaks. This is an impossible standard because John Roseman is Team Leader for two separate lines which have simultaneous stop and start times. So, there is the constant, intentionally inflicted stress of not getting to the reprocess line in time to turn it off and unprepared units are painted rendering them defective.

John Roseman is a man of peace with an exceptionally clean work record at Warren Truck and has never acted in aggression toward anyone in the workplace. He wants nothing from this job at Warren Truck but a equal opportunity to earn a living to support himself and his family of a Wife and five children.

So, from this initial complaint from John Roseman in December of 2015, Darlene has not ceased to plot and scheme against him. People are constantly whispering to and telling John Roseman things like "watch your back, she's out to get you". She consistently complains and recruits Kalu Jones the union steward to harass John Roseman about things she suggest are defects in the quality in which he does his job. She has recruited and engaged the Team Leader Review Board in an effort to get John Roseman dismissed / fired from his job as a Team Leader. She told current supervisor Herbert Wright that she refuses to do her job wiping down a truck if John Roseman touches before her. Why does she treat him with such hate? Perhaps it can be summed up in her own words which was witnessed by many. " You need to get some BALLS" she said to him, referencing his male genitalia. Apparently, Darlene Ark feels John Roseman is Gay, Transgender, or in so way not man enough. The man John Roseman is or has chosen to be is a repulse to Darlene Ark. John Roseman is, for the record, not Gay or Transgender, but apparently Darlene thinks differently. John Roseman has sought peace with Darlene in every way he knows without resolve.

Darlene Ark returned to work on Wednesday November 15, 2016 after a one week suspension. By this Wednesday, November 24, 2016, she is already back to this behavior where she recruits Kalu Jones the union representative to chastise me for errors or defect in my Team Leader duties. This is stressful, and intentional infliction of stress in the workplace. In this instance Kalu Jones himself concedes that he did not believe her claim of being slighted or somehow ill served as a member of my team.

FCA has a responsibility here. John Roseman has given them nearly 20 year of excellent service. His options for alternatives in finding similar work at comparable pay are scarce if not impossible. He does not wish to bring injury or harm to anyone but these work conditions are becoming inhumane. He feels he can no longer serve in this Team Leader Position effectively. Even if Darlene is removed, he fears retaliation from her many sympathizers. Her husband Donald Mcguire is a Team Leader who's

6

position has direct impact on the workload of the reprocess line for which John Roseman is team leader and this is naturally disconcerting to him. He could in effect keep the reprocess line overloaded with repairs, demoralizing the team, and making John Roseman seem like a Jonah that needs to be tossed from the ship in order for things to improve. John has already put in a request for department transfer to the Body Shop, but he feels he should not be penalized with less pay or increased workload because he is fleeing a hostile, and intentionally stressful situation.

7

7/30/2018                                                                                        815388

From: johniroseman <johniroseman@aol.com>
  To: midocs <midocs@powerschapman.com>
Subject: 815388
  Date: Mon, Nov 7, 2016 9:14 pm

Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.
From: Roseman John (FCA) <john.roseman@fcagroup.com>
Sent: Saturday, November 5, 2016 4:17 PM
To: johniroseman@aol.com
Subject: FW: Harrassment

From: Roseman John (FCA)
Sent: Saturday, November 05, 2016 4:14 PM
To: Wright II Herbert (FCA); Jones Kalu (FCA)
Subject: Harrassment

Herb,

Attempts to contact EAP representative on my behalf have been unrequited as of this present moment. But, I am interested in taking a leave due to emotional distress derived from this whole ordeal of work place harassment involving Darlene Ark and what at times appear to be a conspiracy to protect Darlene while she has continued over the last year or so to launch attacks at me personally, attack other team member, and I even witnessed her cursing you out at the last Team Meeting. My family and I are growing fatigue of this when we are also currently dealing with two deaths in our family. Your prompt, and decisive action would be appreciated.

Regards,

John Roseman

From: johniroseman@aol.com [mailto:johniroseman@aol.com]
Sent: Saturday, November 05, 2016 2:49 PM
To: Roseman John (FCA)
Subject: Fwd: Herber Wright (FD)

-----Original Message-----
From: johniroseman <johniroseman@aol.com>
To: john.roseman <john.roseman@fcagroup.com>
Sent: Sat, Nov 5, 2016 2:42 pm
Subject: Herber Wright

Herbert Wright,

After alerting you, Kalu Jones (UAW Rep), and Brian the human resource representative of what I felt was a hostile situation that involved Darlene Ark a team member on the team for which I am a team leader, you insisted at the threat of

8

7/30/2018                                                              815388

not paying me for refusing work that I must return to my post as Team Leader. I repeatedly expressed my anxieties about doing so, but returned because I did not want to risk discharge or discipline.

Due to the emotional distress of Darlene Ark's harassment and the inaction of FCA I am not well rested today. I would like you to tell me if you are still requiring me to return to my post today as Team Leader given the hostile verbal attack and confrontation that even you witnessed last night where Darlene Ark riddled me with verbal attacks including lewd references to my manhood and genitals. I have not been informed of any countermeasure put in place to insure me that Darlene Ark is not in my work area and that I do not risk being attacked by her today.

Please Advise.


Regards,

John Roseman

9

From: johnlroseman <johnlroseman@aol.com>
To: midocs <midocs@powerschapman.com>
Subject: Fwd: File # 815388
Date: Mon, Nov 7, 2016 9:53 pm

Please consider my notes on the account of the FCA Supervisor below.

What actually happen was that I kept requesting to see the FCA HR representative for our plant because I was certain that he would know better than to demand that I return to my Job given the circumstances. Herb Wright was convinced that I did not have the right to refuse to go back to my post after the hostile attack that he even witnessed. So, in front of my union steward, he continued to argue and debate with me about this until I finally gave in due to his threats of not paying me and discipline. I then returned to my Job as Team Leader, while Darlene Ark was still on her Job. Keep in mind that Darlene Ark has a long history of leaving her job to pursue and engage conflict.

Why would I ask for a lawyer at nearly 1:00 am to see me in a Assembly Plant? Does not make sense. I have no lawyer on retention that would come to my aid in a plant in the middle of the night.

-----Original Message-----
From: johnlroseman <johnlroseman@aol.com>
To: midocs <midocs@powerschapman.com>
Sent: Mon, Nov 7, 2016 9:16 pm
Subject: File # 815388

Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.
From: Wright II Herbert (FCA) <herbert.wright@fcagroup.com>
Sent: Saturday, November 5, 2016 4:16 PM
To: johnlroseman@aol.com
Subject: RE: Herber Wright (FD)

Mr. Roseman,
While your union steward was present I clearly stated that I would take on all TL duties on Reprocess due to the situation. I ask if you could resume your duties on a separate line. By doing this this it would have avoid any direct report and contact with Mrs. Ark. All this is was stated in front of your steward, but you kept saying that you wanted your Lawyer and whatever he says that what you would do. I apologize if that wasn't understood but it was stated and explained to you. Lastly, I would never put anyone in a situation in which anyone would be harassed or threaten FCA and myself has a Zero Tolerance for any behavior of this magnitude
Thank you for your email.

From: johnlroseman@aol.com [mailto:johnlroseman@aol.com]
Sent: Saturday, November 05, 2016 2:52 PM
To: Wright II Herbert (FCA)
Subject: Fwd: Herber Wright (FD)

Herbert Wright,

After alerting you, Kalu Jones (UAW Rep), and Brian the human resource representative of what I felt was a hostile situation that involved Darlene Ark a team member on the team for which I am a team leader, you insisted at the threat of

10

not paying me for refusing work that I must return to my post as Team Leader. I repeatedly expressed my anxieties about doing so, but returned because I did not want to risk discharge or discipline.

Due to the emotional distress of Darlene Ark's harassment and the inaction of FCA I am not well rested today. I would like you to tell me if you are still requiring me to return to my post today as Team Leader given the hostile verbal attack and confrontation that even you witnessed last night where Darlene Ark riddled me with verbal attacks including lewd references to my manhood and genitals. I have not been informed of any countermeasure put in place to insure me that Darlene Ark is not in my work area and that I do not risk being attacked by her today.

Please Advise.


Regards,

John Roseman

11

7/30/2018                                                    81536 Intentional Infliction of Emotional Distress

From: johnlroseman <johnlroseman@aol.com>
  To: midocs <midocs@powerschapman.com>
Subject: 81536 Intentional Infliction of Emotional Distress
  Date: Mon, Nov 28, 2016 6:10 am

On Saturday November 5, 2016, upon returning to work at Warren Truck Assembly Plant John Roseman was summoned to a meeting with UAW representative Kalu Jones and FCA labor representative Brian Kauflin. In this meeting Brian Kauflin explained to John Roseman why he had not been made aware of actions taken to address the events occurring on the previous shift involving Darlene Ark. In this meeting he assured John Roseman that "We are working on this" and due to gravity of her acts and conduct, Brian Kauflin says to John Roseman in the presence of Kalu Jones that "Darlene Ark is not here, she will not be here this week, and I don't know that she will ever return to work here!". In this meeting FCA labor representative Brian Kauflin also addresses John Roseman's concern that there is a conspiracy to protect Darlene Ark. Brian Kauflin tells John Roseman that there is no conspiracy on his behalf to protect Darlene Ark. Brian Kauflin goes on to say that " I do not know Darlene Ark, I only meet her yesterday (or on the previous work shift)".

Later that evening (Saturday Nov.5, 2016) UAW rep Kalu Jones, approaches John Roseman and informs him that Darlene Ark will be on suspension for 31 days.

Darlene Ark instead returns Wednesday November 16th, 2016 to her regular job on John Roseman's team.

On Friday, November 18th, 2016 John Roseman is summoned via radio by Supervisor Herbert Wright to Darlene Ark's job. When John Roseman arrives he is meet by Supervisor Herber Wright and UAW representative Kalu Jones. They ask John Roseman to relieve Darlene Ark from her job while she goes to attend a meeting with FCA Labor representative Brian Kauflin and Plant Manager Richard L Henderson. While John Roseman is doing Darlene Ark's job, Business Unit Leader Thom Thorton approaches John Roseman and confirms that Darlene Ark has gone to meet with Richard Henderson and Brian Kauflin. In this short exchange, Thom Thornton also ask John Roseman if he is "OK with everything".

On Wednesday, November 23rd, 2016, Kalu Jones approaches John Roseman on Color 2 Prep tack-off area of the Paint Shop at Warren Truck Assembly Plant and informs him that he confirmed in a conversation with FCA labor representative Brian Kauflin that Plant Manager Richard L Henderson contacted him regarding Darlene Ark and pressured him to abort what he felt was appropriate discipline.

Given the circumstances, is there any reason for John Roseman to expect fair equitable outcomes for himself at Warren Truck Assembly Plant? Is there any reason that he would not fear retaliation. John Roseman, as any reasonable person would be is suffering from extreme emotional distress intentionally inflicted upon him by what appears to be coups and schemes raining down on him from the highest level of FCA management in the plant in which he is employed.

In addition to trying to get John Roseman fired from his job as Team Leader, Darlene Ark seems to have been emboldened to bully, and harass John Roseman for almost a year with an apparent sense of being able to do so with impunity. Why?

On John Roseman and his family's behalf, we are asking FCA to grant John Roseman an immediate paid leave of absence pending an investigation. As of November 25, 2016, John Roseman has earned $101,535.79. We are requesting that the pay he receives while on leave matches the average overtime and applicable bonuses he would receive assuming he was still working this calendar year being the standard. Further, we are requesting that John Roseman experiences no breach in any other employee benefits including but not limited to: Credited Service, Holiday Pay, Vacation Pay, and All Applicable Insurances (Health, Dental, Life).

12

7/30/2018                                                    81538 Intentional Infliction of Emotional Distress

13

POOR QUALITY ORIGINAL



14





16



# EXHIBIT D

2



3



4





6



7



8



9



10





12



13



14



# EXHIBIT  E

Case 2:18-cv-13042-DML-DRG   ECF No. 1, PageID.88   Filed 09/28/18   Page 88 of 98

## MUMFORD HIGH SCHOOL
### COMPACT PROGRAM

# CERTIFICATE OF CITIZENSHIP

**Presented To**

_John Roseman_

RECIPIENT

## FOR

Adhering to all guidelines of the
Student Code of Conduct.

R. ODEN
PRINCIPAL

MARCH 7, 1990

DATE

MUMFORD HIGH SCHOOL

MICHIGAN BELL

COMPACT PARTNER

**AFFIANT:**

*TIMOTHY W. DEZERN - (CID. 1053050)*

Print Name

Address: *13432 WHITTIER DR. STERLING HGTS. MI. 48312*

*586-277 3934*

Phone

Approximately how long have you known John Roseman as a
co-worker and fellow employee FCA?

*ABOUT 5 YEARS OR MORE.*

Comments:

Having worked with John Roseman, would you recommend him
to employers to hire?

■ Yes | ☐ No

Please rate John Roseman on the quality of fairness as a co-worker/Team Lead.

☐ 1    ☐ 2    ☐ 3    ☐ 4    ■ 5

**Disappointing**                                                                 **Exceptional**

Please rate John Roseman in terms of honesty/general integrity.

☐ 1    ☐ 2    ☐ 3    ☐ 4    ■ 5

**Disappointing**                                                                 **Exceptional**

As Team Leader was John Roseman...

**Courteous?**                      ■ Yes | ☐ No

**Informative?**                    ■ Yes | ☐ No

**Prompt and efficient?**           ■ Yes | ☐ No

**Comments:**

Please share any additional comments.

*MR. ROSEMAN IS TRUSTWORTHY, HONEST, AND FAIR, AND A REAL GOOD MAN.*

1

_____
_____
_____
_____
_____
_____
_____
_____
_____

**Attributes that best describe John Roseman as a co-worker:**

☑ Peaceful     ☑ Diligent     ☑ Honest     ☐ Lazy

☐ Contentious  ☑ Hardworking     ☐ Violent     ☑ Responsible

☐ Reckless     ☐ Confrontational     ☑ Polite     ☑ Good Manners

☐ Poor Manners     ☐ Hostile     ☑ Wise     ☐ Foolish

☑ Patient     ☐ Short Fuse     ☐ Crude     ☑ Respectful

Would you say that John Roseman's workplace behavior could be reasonably considered hostile, threatening, coercive, intimidating or harassing?

☐ Yes | ☑ No     _ABSOLUTLY NOT..._

Please share any additional comments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

2

This affidavit is made on my personal knowledge and, and if sworn as a witness, I can testify competently to the facts in this affidavit.

_____
Affiant Signature

Subscribed and sworn before me on ___8/25/2018___ MACOMB County, Michigan.
                                           Date

My commission expires: ___3/31/2023___  Signature; _____
                          Date                           Notary Public

Notary public. State of Michigan, County of Macomb

# EXHIBIT   F

# ACKNOWLEDGMENT & NOTICE OF HEARING

## Department of Licensing and Regulatory Affairs

### Workers' Compensation Agency

JOHN L. ROSEMAN
24823 COBBLESTONE CT
FARMINGTON HILLS  MI  48336

SSN:  XXX-XX-7583     CASE:  1

\* NOTICE TO EMPLOYER:  PLEASE CONTACT
YOUR INSURANCE CARRIER REGARDING YOUR
PARTICIPATION IN THESE PROCEEDINGS. IF
YOU ARE NOT INSURED, YOU MUST ATTEND.

FCA US LLC
1000 CHRYSLER DRIVE
CIMS 485-07-26
AUBURN HILLS  MI  48326
DOI'S:        07/26/2018

SEDGWICK CLAIMS MANAGEMENT SERVICES, I
PO BOX 14574
LEXINGTON  KY  40512

Notice is given that an Application for Mediation or Hearing has
been received by our agency.

This case is being scheduled for a TELEPHONE MEDIATION as outlined
below.  If it is subsequently determined that the parties need to
attend in person, another hearing notice will be issued.

Failure of either party to participate may result in agency action
as provided by R408.40b.

FACILITATOR:     KATHRYN A. WITCHELL          DATE:  10/17/2018
                 FACILITATOR WILL CALL PARTIES.  TIME:  01:45 PM
                 IF YOU HAVE QUESTIONS OR ARE
                 UNAVAILABLE ON THIS DATE, CALL
                 (517) 284-8892
HEARING TYPE:    TELEPHONE MEDIATION

Dated at Lansing, Michigan, on this 14th day of September, 2018

WC-771 (1/08) CW4652

# EXHIBIT  G

Case 2:18-cv-13042-DML-DRG   ECF No. 1, PageID.94   Filed 09/28/18   Page 94 of 98

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   John L. Roseman, Sr.
      24823 Cobblestone Court
      Farmington, MI 48336

From:   Louisville Area Office
        600 Dr Martin Luther King Jr Pl
        Suite 268
        Louisville, KY 40202

☐ On behalf of person(s) aggrieved whose identity is
  CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2018-04269 | Eric M. Baez,<br>Investigator | (502) 582-5823 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*for*   C/S

**Richard T. Burgamy,**
**Area Office Director**

September 17, 2018

(Date Mailed)

Enclosures(s)

cc:

**Howard Weisel**
**1000 Chrysler Drive**
**Auburn Hills, MI 48326**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **John L. Roseman, Sr.**
**24823 Cobblestone Court**
**Farmington Hills, MI 48336**

From:  **Louisville Area Office**
**600 Dr Martin Luther King Jr Pl**
**Suite 268**
**Louisville, KY 40202**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 471-2018-04259 | **Lora Bentley,** **Investigator** | **(502) 582-5692** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Lora Bentley, for:_

Enclosures(s)

**Richard T. Burgamy,**
**Area Office Director**

9/18/2018
(Date Mailed)

cc:  **Cynthia Harris**
**International Rep**
**UAW**
**8000 E. Jefferson Ave.**
**Detroit, MI 48214**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
John L. Roseman

**DEFENDANTS** International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)

**(b)** County of Residence of First Listed Plaintiff Oakland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Wayne

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

NOTE:

Attorney:

Case:2:18-cv-13042
Judge: Lawson, David M.
MJ: Grand, David R.
Filed: 09-28-2018 At 10:21 AM
CMP ROSEMAN V. UAW ET AL (NA)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 340 Marine / | | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - Medical Malpractice | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities Other / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 9/28/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                       ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other          ☐ Yes
            court, including state court? (Companion cases are matters in which      ☑ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :