UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN L. ROSEMAN,

        Plaintiff,                                Case Number 18-13042

v.                                           Honorable David M. Lawson
                                                Magistrate Judge David R. Grand

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW), FCA US, LLC,
UAW LOCAL 1700, and UAW LOCAL 140,

        Defendants.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff John Roseman, employed at the Sterling Heights, Michigan Chrysler (FCA US, LLC) assembly plant, crossed paths with a difficult co-worker, which caused him such stress that he took a worker's compensation leave and declined to return to work when a company doctor pronounced him fit. Believing that the company's and his union's response to the perceived harassment was insufficient, Roseman brought suit for discrimination and retaliation under federal law and also asserted a variety of state law claims. He also filed a motion for a temporary restraining order and preliminary injunction, which brings that matter before the Court presently. The case was referred to Magistrate Judge David Grand for general case management. Judge Grand filed a report recommending that the motion be denied. Roseman, acting *pro se*, filed a motion for reconsideration, which the Court will construe as objections to the report and recommendation, arguing that the magistrate incorrectly addressed one of the four factors bearing on issuance of a preliminary injunction: irreparable harm. He did not object to the discussion of

the other factors, including perhaps the most important one, namely, that he likely would not succeed on the merits. The four factors, considered together, do not favor the issuance of injunctive relief. Therefore, the Court will overrule Roseman's objections, adopt Judge Grand's report and recommendation, and deny the motion for an injunction.

I.

Roseman seeks an injunction that requires Chrysler, "it's [sic] agents, and or employees to immediately cease harassment of Plaintiff and interference with his prescribed medical treatment . . ., immediately cease it's [sic] outrageous, perfunctory, and unusually negligent behavior in trying to induce Plaintiff to return to a hostile work environment . . ., [and r]equire Defendant FCA US LLC and its employees and/or agents to discontinue threatening to discharge Plaintiff for not returning to a hostile work environment cultivated by Defendants FCA US LLC and UAW." ECF No. 15, Page.ID.231. The magistrate judge recommended denial of the motion mainly because he believed that Roseman could not show irreparable injury, but he also found no likelihood of success on the merits.

According to the complaint and motion papers, Roseman is an African-American man over the age of forty, who has been employed by Chrysler for twenty years. Almost immediately upon being transferred to Chrysler's Sterling Heights assembly plant, Roseman alleges, he witnessed another employee at the plant, Dominik Amond, engage in a "constant campaign of harassment, coercion, intimidation, and threating behavior toward co-workers and supervisors alike . . ." Am. Compl. ECF No. 1, PageID.4. Roseman contends that he eventually became the focus of Amond's harassment, resulting in the plaintiff developing acute anxiety and experiencing severe emotional distress. Roseman subsequently filed this employment case *pro se* against Chrysler and his union,

the International United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and two Locals, alleging that the defendants declined to take any action against Amond because of plaintiff's age, race and gender. Additionally, Roseman pleaded various other claims against his employer and union, including intentional infliction of emotional distress, retaliation, negligent retention of an employee, and defamation.

In his complaint, Roseman alleges that this is not Amond's first time exhibiting inappropriate behavior towards other employees. Around the same time the plaintiff was transferred to the Sterling Heights plant, a Chrysler employee by the name of Kyanne Gaddis "advised FCA management that Dominik Amond threatened her and that she 'feared for her life.'" ECF No. 1, PageID.6. Security personnel were called to the scene and after investigating the alleged threat, Amond was disciplined and Gaddis was transferred to a different shift "for her protection." *Ibid.* Similarly, Roseman also contends that this is not the first time Chrysler has failed to take corrective action regarding one of its coworkers, as he was harassed by another employee, Darlene Ark, for over a year beginning in 2015.

Roseman identifies late July as the turning point in his relationship with Amond. The plaintiff states that he was filling in as team leader on July 25, 2018, which Amond immediately took issue with, sending a message in a work group text saying, "I guess since we got a new [team leader] for this week it comes with new rules and micro management." ECF No. 1, PageID.74. The plaintiff also states that Amond was angered by his decision to follow Chrysler supervisor's orders to allocate additional manpower to a specific area in the plant by "mak[ing] it clear to plaintiff through hostility, coercion, intimidation, and threatening behavior that he is not going to allow plaintiff to do his job as ordered . . ." ECF No. 1, PageID.7. The plaintiff states that he was prevented from doing his job because Amond would not allow other employees to work in his

space. ECF No.1, PageID.8. Chrysler supervisors subsequently confronted Amond, and when the plaintiff joined the conversation, he alleges, Amond "became visually agitated and commenced to lash out at plaintiff directly but retreated." *Ibid.*

The following day, July 26, 2018, Amond continued to express his displeasure with Roseman, texting "[s]tay woke everyone john the reason we all having a meeting and finna get watched masking" and "[r]ember every be on time y'all kno who made it hot up there so stay woke." Additionally, the plaintiff contends that Amond showed "physical aggression and hostility" when he "rushe[d] up from about 20 yards away . . . yelling 'what's going on?'" Roseman sent an email to Chrysler supervisor Jana Hines asking her to intervene the in situation, attaching screenshots of the text messages identified above. Hines later responded to the plaintiff assuring him that action would be taken and stating "[n]o one should have to work like this." ECF No. 1, PageID.84.

Later in his shift, the plaintiff was summoned to a conference room with Hines and UAW representative Keith Hall. During the meeting Roseman further explained his concerns about Amond's "campaign of harassment," and he alleges, Hines agreed that Amond would be immediately removed from the area and disciplined. Hall expressed more reservations, stating that he did not want to deal with Chrysler Labor Relations representative Cynthia Johnson because he had recently lost a battle with her over a previous employee, but nonetheless agreed with Hines's conclusion that action needed to be taken. Roseman was then asked to send Amond to the union office, which he did. However, hours later, Roseman observed Amond still working in the plant and in an area even closer to Roseman than before. Upon realizing that Amond had not been removed from the area as promised by Hines and Hall, Roseman says he became "traumatized and immensely distressed." ECF No. 1, PageID.11.

Roseman was then summoned to the union office, where, he alleges, Hall described him as an "old head." ECF No. 1, PageID.12. In the meeting, Hall also told him that the plan to remove and discipline Amond was rejected by the UAW Chief Eddie Smith. Roseman contends that the UAW did not want to pursue action against Amond because the only Chrysler labor representative available was Cynthia Johnson, and because the union was worried that Chrysler supervisors would use disciplinary action taken against Amond as a precedent for disciplining other union members. Based on this theory, Roseman concluded that the UAW had breached its duty to him by "decid[ing] . . . that plaintiff would be collateral damage." ECF No. 1, PageID.13. Roseman contends that the stress caused by the dispute was so great that he decided to take leave and did not return to work after July 26. He did, however, reach out to Chrysler supervisor Hines on July 28, 2018, still confused about why Amond was not removed from his area. Hines told Roseman that Hall and Johnson thought Amond was not aggressive enough to remove and that "[t]hey need more." ECF No. 1, PageID.85.

Roseman originally was placed on workers compensation following his leave of absence, but was notified on October 22, 2018 by Sedgwick, Chrylser's third party administrator, that he would have to undergo an independent medical examination to determine his eligibility for disability benefits. Mot. TRO, ECF No. 15, PageID.252. Roseman reported to Dr. Neil Talon on October 30, 2018, who ultimately concluded that Roseman's mental state would not affect his ability to work. Dr. Talon characterized the plaintiff's issue as "more of a legal or human resources issues" and "not an active psychiatric problem." Am. Compl., ECF No. 40-1, PageID.704. Subsequently, Roseman received notice from Sedgewick on November 1, 2018 that Dr. Talon had cleared him to return to work, and that if he failed to do so his healthcare benefits would be terminated. In response, Roseman asserted that Dr. Talon "had no intentions of rendering an

objective, ethical or 'appropriate' decision" because Dr. Talon refused to review additional medical documents that plaintiff brought to his examination and was allegedly rude to the plaintiff. Roseman never returned to work at the Sterling Heights plant, stating that he fears for his personal safety and is in imminent danger of physical and mental problems due to the hostile work environment. ECF No. 15, PageID.230. However, the magistrate judge notes that at oral argument on the motion, Roseman acknowledged that Chrysler offered to return him to his duty station with Amond transferred elsewhere so they would not be working together.

In his complaint, Roseman alleges that the defendants violated the Employment Act of 1967 and Title VII of the Civil Rights Act of 1964 by subjecting him to age and sex discrimination, as well as retaliation and a hostile work environment. He also stated claims for negligent retention of an employee, breach of duty of fair representation, libel, vicarious liability, and intentional infliction of emotion distress. As noted, the Court issued an order referring the case to Magistrate Judge Grand for general case management under 28 U.S.C. § 636(b).

On November 2, 2018 the plaintiff filed a motion for a temporary restraining order. The defendants responded, and the magistrate judge held a hearing on the motion on November 13, 2018, and subsequently issued a report and recommendation three days later. The plaintiff did not file objections, but he did file a motion for reconsideration, which will be taken as his objections to Judge Grand's recommendation that the motion be denied.

II.

As noted above, the Court takes the plaintiff's motion for reconsideration as timely objections to Judge Grand's report. When timely objections are filed, the Court must "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667

(1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As noted above, Roseman's only challenge is to Judge Grand's determination that irreparable harm has not been shown. He did not lodge any objections to the suggestions that he failed to show a likelihood of success on the merits of his claims for intentional infliction of emotional distress, discrimination, retaliation, or libel claims. The Court can accept the magistrate judge's conclusions on those issues without further review or comment, since "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Rule 65 of the Federal Rules of Civil Procedure authorizes the issuance of preliminary injunctions and temporary restraining orders. When considering whether to issue a preliminary injunction, the court weighs four factors: (1) whether the movant has demonstrated a substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without the injunction; (3) whether the preliminary injunction would cause substantial harm to others; and (4) the public interest, if any, that would be served if the injunction issues. *Overstreet v. Lexington–*

*Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Although these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Ibid*.; *see also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). An inadequate showing of irreparable harm also will preclude such relief. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (observing that "the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction") (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

For the reasons discussed by the magistrate judge, the Court agrees that the plaintiff has not shown a likelihood of success on the merits of any of his claims. One of those claims is especially pertinent in the context of the present motion, namely, the allegations of a hostile work environment, because Roseman seeks an order preventing the defendants from forcing him back into that milieu under pain of otherwise losing his job.

Roseman alleges that the defendants created a hostile work environment when they "effectively support[ed] coworker Dominick Amond's formation of an unlawful combination . . . of coworkers designed to harass, intimidate and penalize plaintiff for complying with FCA management orders to him." ECF No. 9, PageID.135. He states that Amond's conduct "interfered with [his] ability to do his work and contributed to a hostile work environment." *Id*. To establish a hostile work environment claim, the plaintiff must satisfy the following elements under Michigan law:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (citing *Downey v. Charlevoix Cty. Bd. of Rd. Comm'rs*, 227 Mich. App. 621, 629, 576 N.W.2d 712, 716 (1998)).

The Sixth Circuit has expounded on the third element, explaining that "[a] hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts frequently consider "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris*, 510 U.S. at 23.

Here, the plaintiff was never physically threatened, the tension between Amond and the plaintiff did not span longer than a few days, and a reasonable person would not view the two text messages the plaintiff cites as abusive. Chrysler was correct to characterize the situation as "a personality difference or conflict between the two parties" in its brief. ECF No. 19, PageID.330. Therefore, the plaintiff's hostile work environment claim, and consequently his vicarious liability claim, must fail. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

The failure of that claim fatally undermines the plaintiff's request for injunctive relief. The Supreme Court has described a preliminary injunction as "an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), one that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The plaintiff attempts to meet this high bar by stating he "fears for his personal

safety due to a hostile work environment and is in imminent danger of physical, mental, and medical problems" should he be forced to return to work. ECF No. 15, PageID.230. But the plaintiff has not satisfied the basic premise of his claim.

Roseman cites a string of text messages sent by Amond, recited earlier, as proof of impending danger. Additionally he contends that Amond has "repeatedly ma[de] offer to another co-worker, Jacques Burell, to put a 'hit' out on [another individual] . . ." ECF No. 9, PageID.144. The plaintiff also described an incident where Amond showed "physical aggression and hostility" when he "rushe[d] up from about 20 yards away . . . yelling 'what's going on?'"

Based on these allegations, the magistrate judge concluded that the plaintiff had not demonstrated that he was threatened with physical violence. In his first "objection" and at the hearing for the TRO motion, the plaintiff attempted to rebut the magistrate judge's conclusions by stating that the "Court endeavors to differentiate actual physical 'harm' or injury from emotional distress when as a matter of present U.S. and Michigan law, both are equally actionable" followed by a citation to a Michigan case. ECF No. 33, PageID.477.

The plaintiff is correct in stating that courts in this circuit have recognized that emotional harm can be irreparable, as "the hallmark of irreparable injury is unavailability of money damages to redress the injury," *Caspar v. Snyder*, 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015) (citing cases), and "dignitary injuries and distress from assault are often irreparable because they are not readily translatable to dollars," *Berryman v. Haas*, No. 18-10833, 2018 WL 6715826, at *3 (E.D. Mich. Dec. 21, 2018).

Although emotional distress can constitute irreparable injury in some circumstances, the plaintiff has not demonstrated that he will suffer emotional injuries in the first place. Roseman includes multiple letters from a doctor and a nurse practitioner stating that he should not return to

work. Rima A Abbas, M.D. saw Roseman on two separate occasions and wrote "[i]t is not recommended that [Roseman] returns to the facility where he was working, which caused his current Mental health issues to develop," ECF No. 20, PageID.357 and "John L. Roseman was seen in my clinic. He needs to be off until 10/5/18 or until further notice," ECF No. 9-1, PageID.217. Similarly, the plaintiff saw nurse practitioner Jamie L. Fineran twice who wrote "[Roseman] was seen in my office today. He was diagnosed with anxiety," ECF No. 9-1, PageID.215 and "[i]t is my medical opinion that John Roseman will be unable to return to work due to acute anxiety caused by a hostile work environment," ECF No. 9-1, PageID.218.

But those letters provide no details or reasons for the stated conclusions. Instead they simply state that a diagnosis was made or assert a recommendation, presumably based on the history related to the doctors by Roseman himself. The information before the Court may or may not be the same as that related to the medical personnel. And although the medical reports address Roseman's reaction to his work situation, they say very little about the work environment itself. One thing is certain, though: the sum of the incidents described by Roseman do not establish that "the workplace is permeated with discriminatory intimidation, ridicule, and insult," or that there was "an abusive working environment." *Randolph*, 453 F.3d at 733. The magistrate judge correctly concluded that the plaintiff was not in danger of imminent harm, psychological or otherwise.

In his second "objection" the plaintiff disagrees with this conclusion stating that he "is at risk of immediate and irreparable harm in returning to work under the terms proposed by the FCA." ECF No. 33, PageID. 475. However, the terms proposed by Chrysler include allowing the plaintiff to resume his previous duties and physically removing the alleged imminent danger — Dominik

Amond — from the plaintiff's work area. It is unclear how the plaintiff would continue to be threatened when Amond is taken out of the picture.

Roseman has not shown that he will face irreparable injury if he returns to work at Chrysler's Sterling Heights plant. The fact that the plaintiff was diagnosed with acute anxiety does nothing to further his claim, and the text messages he cites from Amond do not show any threat of violence towards the plaintiff. Therefore, the plaintiff is not entitled to injunctive relief. *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) ("the harm alleged must be both certain and immediate, rather than speculative or theoretical"); *Crawford v. Prison Health Servs.*, No. 12-409, 2013 WL 6254331, at *2 (W.D. Mich. Dec. 4, 2013) ("Injunctive relief will not be granted 'against something merely feared as liable to occur at some indefinite time in the future'") (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

### III.

The magistrate judge properly considered the record and correctly applied the governing law in reaching his decision to recommend denial of the plaintiff's motion for injunction relief.

Accordingly, it is **ORDERED** that the plaintiff's motion for reconsideration, construed as objections to the report and recommendation (ECF No. 33) are **OVERRULED**, the report and recommendation (ECF No. 31) is **ADOPTED**, and the motion for a temporary restraining order or preliminary injunction (ECF No. 15) is **DENIED**.

The case is returned to Magistrate Judge Grand for further case management under the previous order of reference.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: September 17, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 17, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI
