UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN L. ROSEMAN,

        Plaintiff,                         Case Number 18-13042

v.                                                Honorable David M. Lawson
                                                     Magistrate Judge David R. Grand

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW), FCA US, LLC,
UAW LOCAL 1700, and UAW LOCAL 140,

        Defendants.
_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DISMISSING THE SECOND AMENDED COMPLAINT**

Plaintiff John Roseman filed a complaint alleging that various rights of his were violated by his employer, FCA US, LLC, several fellow employees with whom he had disputes, and labor unions that represented him through a collective bargaining agreement. The case was referred to Magistrate Judge David R. Grand to conduct all pretrial proceedings. Roseman filed several motions for dispositive rulings on his claims and a motion for a temporary restraining order and preliminary injunction, all of which were denied. After Roseman was permitted to file a first and then a second amended complaint, the defendants severally filed motions for summary judgment. Roseman filed two motions of his own for judgment as a matter of law in his favor on certain claims. Magistrate Judge David R. Grand issued a report recommending that the Court deny Roseman's motions, grant the defendants' motions, and dismiss all of the claims against the defendants with prejudice. Roseman filed timely objections to the report and recommendation.

I.

Roseman raises the following claims in his second amended complaint: (1) age discrimination and hostile work environment harassment in violation of the federal Age Discrimination in Employment Act (ADEA) (Count I); (2) gender discrimination and hostile work environment harassment in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA) (Count II); (3) retaliation in violation of the ELCRA (Count III); (4) race discrimination in violation of the ELCRA (Count IV); (5) civil conspiracy, combined with another apparently freestanding claim of "hostile work environment" (Count V); (6) breach of the duty of fair representation (Counts VI, VII, VIII); (7) intentional infliction of emotional distress (IIED) (Count IX); (8) negligent retention of an unfit employee (Count X); (9) libel (Count XI); (10) breach of contract (Count XII); and (11) infringement of the plaintiff's Second Amendment "right to bear arms" (Count XIII).

The magistrate judge thoroughly discussed the facts that the plaintiff put forth to support these claims, and there is no need to recite them here. It is sufficient to note that Roseman was employed by FCA US, LLC as an assembly line worker beginning in July 1998 at the Warren Truck Assembly Plant and was represented by UAW Local 140. He transferred to FCA's Sterling Heights Assembly Plant in January 2018, where he was represented by Local 1800. His claims in this case are based on three incidents.

The first — the Darlene Ark Incident — occurred when Roseman was a Team Leader supervising Ark in 2016, who responded to Roseman's direction with cursing and invective and told the plaintiff that he needed "to get some balls." FCA suspended Ark on November 5, 2016, but she returned to work on November 15, 2016. Roseman was dissatisfied with FCA's disciplinary action, complained to a supervisor and an FCA Labor Representative, filed a

grievance, and hired an attorney. FCA retained outside counsel to investigate Roseman's complaints, who did not recommend any further discipline as a result of her investigation, and Roseman eventually indicated that he was satisfied with FCA's actions.

The magistrate judge referred to the second incident as the Union Election Flyers Incident, which occurred in March 2018 when Roseman ran for Local 1700 union steward. To support his campaign, he posted flyers throughout the plant that depicted him holding a rifle and asking, "Is it time for a new sheriff[?]" Those photos caused concern with FCA's Labor Relations department and eventually led to an investigation and a written warning that the flyers were not appropriate in the workplace. Roseman demanded that his union pursue a grievance over the discipline, and that FCA and UAW officials convey to him a "public apology" and remove the record of discipline from his employee file. However, his Shop Committeeman and Union Steward explained to him that the matter was resolved and no grievance would be filed.

The third incident was provoked by co-worker Dominic Amond in late July 2018 when Roseman was filling in as a Team Leader. Amond was displeased with Roseman's management style and sent nettlesome text messages to various co-workers criticizing him. Roseman complained to supervisors and was told that Amond would be disciplined and removed from the team. Roseman then returned to work but alleged that he was "traumatized and immensely distressed" later that day when he saw Amond still working and staring at him with a "grim, unflinching and negative look on his face." Roseman met with his supervisor again at 1:00 a.m., who explained that he had spoken with Amond about the impropriety of his texts and statements to Roseman, warning Amond that his behavior was inappropriate and could result in termination. The supervisor also commented to Roseman that he told Amond, "John's an OLD HEAD." However, the supervisor told Roseman that Amond would not be disciplined. Roseman did not

return to work after his shift ended that morning, because he felt that the work situation was too stressful.

Roseman subsequently went on medical leave. About three months later, a company psychiatrist completed a medical examination and concluded that Roseman could return to work without restrictions. On November 1, 2018, FCA sent Roseman a letter instructing him to return to work by November 21, 2018. The letter advised Roseman that the applicable provisions of FCA's health benefits program provided that the medical evaluation was "final and binding," that sick leave benefits would not be paid beyond the date of the evaluation, and that if Roseman wanted to dispute the medical opinion then he could seek review of the determination by submitting a request to the FCA Service Center within 60 days after receipt of the return-to-work letter.

Roseman subsequently conveyed to FCA his disagreement with the medical assessment, based on his concern that he "would have been going right back to work with Amond in the same work area," and FCA responded that it was willing to address that concern. On November 9, 2018, FCA sent Roseman an e-mail stating, "The plant would like to return you to work to your same job —same department and position. They will be moving Mr. Amond to [a] different department, so that you will not have to work with him." Email dated Nov. 9, 2018, ECF 87-6, PageID.2359. Roseman replied, stating: "Thank you, but sorry, I can't do that." It is undisputed that to date Roseman has not returned to work at FCA in any position.

During this litigation, at a November 13, 2018 hearing before the magistrate judge on Roseman's motion for a temporary restraining order, FCA again offered to allow Roseman to return to work, on the same terms previously proposed. Roseman refused that offer on the record. Based on his refusal to return to work, on December 3, 2018, FCA terminated Roseman's employment.

On January 12, 2019, Roseman e-mailed his union representatives, asking that the union file a grievance on his behalf related to his termination. He wrote that he disputed the psychiatrist's findings. Roseman's union representative immediately responded via email, stating that a grievance would be filed, but that Roseman had waited too long to seek review of the medical exam results, because the 60-day window had expired. Roseman's UAW Local 1700 representative later filed a grievance on Roseman's behalf challenging FCA's termination of his employment; when UAW Local 1700 filed its motion for summary judgment that grievance was still pending.

On November 14, 2019, Roseman filed a motion for partial summary judgment on his claim against UAW Local 1700 for breach of the duty of fair representation. On November 26, 2019, Roseman filed a motion for partial summary judgment on his IIED claim against FCA US, LLC. On December 13, 2019, he filed yet another motion for partial summary judgment, which was stricken as procedurally improper. The defendants later filed their respective motions for summary judgment. The magistrate judge issued his report recommending that the plaintiff's motions be denied, the defendants' motions granted, and the case be dismissed. Following Roseman's timely objections, the matter now is before the Court for a fresh review.

II.

The filing of timely objections to a report and recommendation requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in

order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

This review is not plenary, however. "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

As an initial matter, many of the positions stated in the plaintiff's objections are unsupported by any citations of pertinent record evidence or legal authority on point, and instead consist mainly of unelaborated expressions of the plaintiff's "belief" that his proofs satisfy the elements of his claims and that a jury could find in his favor, or unsupported statements of generalized disagreements with the magistrate judge's conclusions. It is well settled that "'[a] general objection to the entirety of the magistrate [judge's] report has the same effect as would a failure to object,' and an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in the context of Federal Rule of Civil Procedure 72." *Brown v. City of Grand Rapids*, No. 16-2433, 2017 WL 4712064, at *2 (6th Cir. June 16, 2017) (order) (quoting *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). Many of the plaintiff's purported "objections" advance little more than generalized disagreement

with the magistrate judge's conclusions, unsupported by any specific factual basis or legal authority on point calling into question the magistrate judge's application of the law to the record facts. Those insubstantial arguments do not forestall adoption of the recommendation.

Moreover, mere reiterations of previously pleaded factual assertions and disconnected citations of legal authority, devoid of any substantive legal argument against specific findings or conclusions by the magistrate judge, are insufficient to preserve objections for review by this Court. *Cowans v. Abioto*, No. 20-2024, 2020 WL 3086562, at *2 (W.D. Tenn. June 10, 2020) ("Plaintiff's objections merely repeat the allegations in his Complaint and Amended Complaint. . . . Plaintiff has also attached several hundred pages of documents, which are largely incomprehensible, and which appear to be copies of documents previously filed with his Complaint and Amended Complaint or filed in response to the Magistrate Judge's show cause order directing Plaintiff to respond to the Motion to Dismiss. In sum, Plaintiff's repetitious arguments and incomprehensible documents do not constitute objections."); *Givens v. Loeffler*, No. 19-617, 2019 WL 4419980, at *2 (S.D. Ohio Sept. 11, 2019) ("Plaintiff's objections simply repeat a recitation of the elements of this claim and make additional conclusory allegations. He does not demonstrate why the magistrate judge's recommendation was erroneous."); *McDougald v. Erdos*, No. 17-00464, 2018 WL 4573287, at *2 (S.D. Ohio Sept. 25, 2018) ("In his objections, Plaintiff summarily states, for each claim, that 'it was error in the context of the entire record' for the Magistrate Judge to recommend dismissal of that claim. He then, for each claim, largely repeats the facts and arguments set forth in his Amendment Complaint and his Response to Defendants' Motion to Dismiss, and the case law and portions of analysis found in Defendants' Motion to Dismiss and the Magistrate Judge's R&R. A review of his objections also reveals that his arguments are comprised almost entirely of general disagreements with the Magistrate Judge's

recommendation without any additional or new support for those disagreements.") (citations omitted). Substantial portions of the plaintiff's objections also run along that vein, and therefore those parts also present no meaningful rebuttal to the magistrate judge's conclusions.

Those points on which the plaintiff raised more specific arguments that were supported by at least some factual and legal basis are discussed further below.

### A. Hostile Work Environment Claims

The magistrate judge concluded that the claims of age-, sex-, and race-related hostile work environment harassment must be dismissed because none of the evidence advanced by the plaintiff was sufficient to support a jury finding that any mistreatment he suffered objectively would be perceived as either "severe" or "pervasive." The magistrate judge noted that the incident with Darlene Ark occurred more than a year before and at a separate workplace from the other events, and, moreover, the plaintiff conceded at his deposition that he was "satisfied" by FCA's resolution of his complaints about Ark. The magistrate judge also found that a mere verbal reprimand for posting flyers depicting the defendant holding a gun and declaring himself the "new sheriff" would not be perceived by any reasonable employee as hostile; in fact much more severe (and arguably entirely appropriate) sanctions were considered and discarded before the mild (and nevertheless unacknowledged) verbal reprimand was issued. The magistrate judge also concluded that no reasonable employee would perceive the "Old Head" remark as overtly hostile or offensive, and, even if it could be construed as such, all of the incidents taken together amounted to nothing more than isolated slights and indignities that did not demonstrate objectively severe and continual harassment. Finally, the magistrate judge found that the mocking text messages and "staring" by Amond also did not qualify, even along with all the other incidents, as rising to the level of creating an objectively intolerable working environment.

It is well established that, in order to prevail on a hostile work environment claim, the plaintiff must prove "both that the harassing behavior was 'severe or pervasive' enough to create an environment that a reasonable person would find objectively hostile or abusive, and that he or she subjectively regarded the environment as abusive." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008). "Conduct that is merely offensive" does not suffice; to be "actionable, the harassment must consist of more than words that simply have sexual [or ageist or racist] content or connotations." *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 459-60 (6th Cir. 2004). Instead, the plaintiff must show that he was forced to endure a workplace permeated with "discriminatory intimidation, ridicule or insult" that was sufficiently severe or pervasive to alter the conditions of employment. *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 65-67 (1986). Factors that courts consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006). The entire record, read in the most generous light, does not allow the plaintiff to clear, or even approach, that substantial evidentiary hurdle, and his objections do not identify any errors of fact or law in the findings and conclusions of the magistrate judge on this point.

In his first objection, Roseman criticizes the magistrate judge's characterization of the case as "arising out of relatively minor disputes." In his third objection, Roseman insists that his supervisor's description of him as an "Old Head" was not flattering, and he perceived the remark as being an indication of age-related animus. Neither of those arguments demonstrates any error in the magistrate judge's conclusion that all of the conduct taken together simply could not support

a jury finding that Roseman's work environment was rendered objectively intolerable by any of the incidents that he described.

Roseman's fourth objection consists entirely of a lengthy diatribe on his belief that Darlene Ark was "out to get him," and his suspicions that she engaged in many nefarious deeds to that end (most of which are described only in the vaguest terms). However, Roseman's rant about Ark is not supported by any citations of actual record evidence that Roseman contends the magistrate judge overlooked in assessing the significance of the plaintiff's grievances. Roseman also points to no evidence rebutting the magistrate judge's conclusion, based on Roseman's own deposition testimony, that he expressed his satisfaction with the handling of his complaints about Ark by the Unions and FCA.

In his fifth and sixth objections, Roseman disputes the factual account of the "election flyers incident," contending that he never was told to remove the flyers by his supervisor, and that he did remove them after the HR meeting on March 8, 2018, where FCA's Labor Relations representative told him to do so. However, Roseman does not point to any evidence calling into question the magistrate judge's depiction of the substantive content of the flyers, or the assertion by FCA that the flyers' content violated company policies forbidding "intimidating" and "threatening" workplace messages. Nothing in Roseman's presentation calls into question the magistrate judge's main conclusion that the issuance of a verbal warning as an admonishment for the posting of the flyers simply does not suggest that the work environment was rendered pervasively intolerable.

Roseman's ninth objection consists of unsupported assertions that Dominic Amond's behavior was "particularly provocative and emotionally distressing," and that Roseman endured many other minor incidents of harassment without complaint. This objection is not supported by

any reference to evidence that the magistrate judge purportedly overlooked in assessing the seriousness of Amond's behavior. And Roseman's mere assertion of his personal belief that Amond's behavior was "intolerable" does not aid his presentation.

In his tenth objection, Roseman offers a list of "anecdotes" purportedly drawn from news accounts of shootings or other violent incidents at automobile factories, which he believes show that the magistrate judge underestimated the seriousness of harassment that Roseman was subjected to by his co-workers Ark and Amond. However, he does not explain how any of those incidents have any relation to the facts in this case, and all of them apparently involved persons and events entirely disconnected from the facts presented by this record.

Finally, in his eleventh objection, Roseman asserts that the magistrate judge displayed "bias" against him by relying on "extrajudicial sources" for a factual assertion that Roseman was told by FCA Supervisor Jana Hines to "go to human resources" with his complaints about text messages that were sent by Amond. The magistrate judge cited the second amended complaint as supporting that assertion, in which Roseman alleged, in response to the plaintiff's emails about Amond's conduct, that "[Hines] assured Plaintiff that swift action would be taken and that she would engage the FCA Labor Relations representative in about an hour." Am. Compl., ECF No. 40, PageID.602. The magistrate judge's characterization is a fair reading of the facts pleaded. Moreover, even if that reading was inaccurate in some respect, Roseman has not explained how the misreading of such a peripheral fact has any bearing on the pertinent legal question, which is whether any of the conduct evidenced in the record demonstrates pervasive hostility in the workplace. The charge of "judicial bias" is without any foundation in the record of the proceedings, and this objection offers no factual or legal rebuttal to the conclusion that the record cannot sustain the workplace harassment claims.

B. Discrimination Claims

The magistrate judge concluded that the claims of age, race, and gender discrimination must be dismissed because the plaintiff had not presented sufficient evidence to raise any triable questions of fact about whether he suffered an adverse employment action, was treated differently than a similarly situated employee, or was discharged on mere pretext. Roseman has not offered any persuasive rebuttal to any of those findings.

Roseman's objections principally attack the magistrate judge's finding that he had failed to show he suffered any "adverse action." In the context of discrimination claims, "typically [an adverse action] takes the form of an ultimate employment decision, such as 'a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Pena v. Ingham County Road Commission*, 255 Mich. App. 299, 312, 660 N.W.2d 351, 358 (2003) (quoting *White v. Burlington Northern & Santa Fe Railway Co.*, 310 F.3d 443, 450 (6th Cir. 2002)). Roseman has not offered any evidence that he suffered any such consequences during his employment any time before his termination. Moreover, none of the purported affronts to his dignity that Roseman says he endured in the workplace suffice to demonstrate that he suffered any cognizable adverse change in working conditions. *See Howard v. Board of Education of Memphis City Schools*, 70 F. App'x 272, 280 (6th Cir. 2003); *Magyar v. United States Postal Service*, No. 18-13447, 2019 WL 1989207, at *6 (E.D. Mich. May 6, 2019); *Fandakly v. Thunder Techs., LLC*, No. 17- 11256, 2018 WL 1965082, at *5 (E.D. Mich. Apr. 26, 2018); *see also Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 597 N.W.2d 250 (1999).

Roseman contends that he was "constructively discharged" when he refused to return to work under conditions that he believed were intolerable. But for an employer's action "[t]o constitute constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Nothing like that has been shown here, where the plaintiff merely attempted to dictate arbitrary changes to his work assignment as conditions for his return, and FCA declined to grant his requests, instead offering to allow a return to work under the same conditions, at the same place, while transferring a problematic co-worker elsewhere.

In his second objection, Roseman contends that he did not "refuse to return to work" but was terminated improperly after he invoked the "appeal process" on Dr. Talon's medical fitness determination. However, he has pointed to no evidence calling into question the defendants' position that any such "appeal" was commenced long after the time for it had expired under applicable provisions of the sick leave policy. Roseman also insists that he only refused to return to "the same facility," and instead requested a transfer to another plant so he would not have to deal with Amond. But he has not pointed to any provision of the collective bargaining agreement or any other work rule that might obligate FCA to accede to the demand for a transfer to another workplace, rather than offering to transfer the plaintiff's co-worker to another assignment to avoid future conflicts. Roseman also has cited no legal authority supporting his apparent position that his employment was "constructively terminated" by FCA's mere refusal to accede to an arbitrary demand for a change in work assignment.

Moreover, Roseman has offered no evidence to demonstrate that the termination for refusal to return to work was pretextual. In his thirteenth objection, Roseman asserts without elaboration

that "[c]onsidering the averments, acts complained of and basis of liability, incorporating by reference the entire record in this case, [he] believe[s] that an objective trier-of-fact would disagree with court" that he failed to advance any evidence demonstrating that the stated reason for his termination (refusal to return to work) was merely pretextual. "There are generally three methods of showing pretext: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [plaintiff's] discharge, or (3) that they were insufficient to motivate discharge.'" *George v. Youngstown State Univ.*, 966 F.3d 446, 473 (6th Cir. 2020) (Rogers, J., concurring in part (quoting *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The plaintiff here admits that he refused to return to his prior position and work assignment when FCA offered multiple times to allow him to return, and to transfer Amond to another location to avoid future conflicts. No rational jury could find any semblance of pretext in the employer's decision to terminate the plaintiff when he refused to accept those eminently reasonable terms.

## C. Retaliation Claims

The magistrate judge found that none of the retaliation claims could proceed because the plaintiff had not produced any evidence suggesting that he had engaged in any "protected activity" prior to any of the allegedly improper responses by the defendants, since none of his complaints mentioned or even alluded in any way to any unlawful age-, race-, or gender-based discrimination. The magistrate judge observed that the evidence suggested only that Roseman had submitted various complaints about treatment he received from the defendants and co-workers, which were not related in any apparent way to his membership in any protected class.

In his twelfth objection, Roseman contends that he presented proof of his engagement in protected activity because after the March 8, 2018 HR meeting he sent an email to FCA's Labor

Relations Staff Lead, Gerard Perez; UAW Shop Committeeman Michael Spencer; and UAW Local 1700 Chief Steward Eddie Smith, in which he "complained of racial stereotyping." Roseman cited as support for that assertion an email that was attached to the amended complaint. The exhibit is a March 25, 2018 email from Roseman to Perez and others, where Roseman wrote the following: "Since you say that this matter was properly handled and resolved, you represent on behalf of FCA that [among other things] . . . Labor representative Cynthia Johnson suggested that she was judging me in the context of recent news or 'what's going on in the World today,' so FCA supports stereotyping in labor disciplinary actions." Am. Compl., Exhibit B, Email dated Mar. 25, 2018, ECF No. 40-1, PageID.644. Nothing else in the email even remotely alludes to racial discrimination, and the allusion to "stereotyping" is devoid of any indication that Roseman was complaining about retaliatory conduct based on sex-, race-, or age-related hostility. It is well settled that such vague and unsubstantiated allusions to improper activity, devoid of any specific assertions of conduct prompted by racial or other unlawful animus, do not constitute "protected activity" for the purposes of Title VII or ELCRA retaliation claims. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) ("[A] vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice."); *see also Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 374 (6th Cir. 2013); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

### D. Fair Representation Claims

The magistrate judge concluded that the breach of duty of representation claims must be dismissed because Roseman had not proffered any substantial evidence suggesting that the efforts by Union advocates on Roseman's behalf, or any decision not to pursue a grievance, were so devoid of any factual justification as to be "wholly irrational" on the Union's part. As the

magistrate judge noted, a union's refusal to pursue a grievance is not actionable unless the plaintiff demonstrates that its decision was "wholly irrational." *Danton v. Brighton Hosp.*, 533 F. Supp. 2d 724, 728 (E.D. Mich. 2008) (citing *Garrison v. Cassens Transport*, 334 F.3d 528, 538 (6th Cir. 2003); *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). In making the required showing, the plaintiff "cannot rely on conclusory statements." *Danton*, 533 F.Supp.2d at 728. The union's "decision on how to pursue a grievance and, ultimately, not pursue a grievance are entitled to deference from [the] Court, and are not actionable if done in good faith." *Ibid.* Union decisions "in these matters are not considered arbitrary unless they are 'so far outside a wide range of reasonableness as to be irrational.'" *Ibid.* (quoting *Driver v. United States Postal Service*, 328 F.3d 863, 869 (6th Cir. 2003)). The decision by union representatives not to further pursue any grievance relating to the workplace flyers incident was eminently rational, particularly because Roseman's representative had succeeded through his effective advocacy in reducing the punishment to an unacknowledged and benign verbal admonishment for an alarming violation of work rules prohibiting intimidating messages in the workplace. The union did in fact file a grievance relating to the medical fitness determination, despite advising Roseman that there was no hope of success since (in mid-January 2019) Roseman had waited too long to appeal the finding. And Roseman has not pointed to any admissible evidence contradicting his own admission that he expressed satisfaction with the union's handling of his complaints about Darlene Ark.

In his seventh and eighth objections, Roseman disputes the magistrate judge's recital of follow up communications with union representatives Eddie Smith and Michael Spencer after the March 8, 2018 HR meeting about the election flyers incident. Roseman insists that Smith never told him that "this was the best the union would be able to do" about the outcome of the meeting being a verbal warning, and Spencer never told him that the matter was "resolved" based on any

such representation. But those disputes over immaterial aspects of the communications between the plaintiff and his union representatives do not implicate any error in the magistrate judge's finding that the record does not demonstrate any arbitrary or irrational refusal by the union to pursue further any grievance claimed by the plaintiff about his working conditions.

### E. Conspiracy

The magistrate judge concluded that the conspiracy claims could not proceed because, for all the reasons noted above, the record does not demonstrate the commission of any actionable intentional tort by any of the named defendants. There was no error in that conclusion. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Consequently, Roseman cannot succeed on a civil conspiracy claim where there is no proof of any underlying intentional tort by a conspirator. *Wiley v. Oberlin Police Dept.*, 330 F. App'x 524, 530 (6th Cir. 2009). The magistrate judge also concluded that the conspiracy claims against the unions and their representatives that were premised on dereliction in the duty of representation under a collective bargaining agreement are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. 185(a) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)). Roseman has not cited any legal authority holding to the contrary.

In his fourteenth objection, Roseman asserts, based on statements allegedly made by FCA supervisor Herbert Wright and UAW Local 140 union steward Kalu Jones during a November 2016 meeting to discuss Roseman's complaints about Darlene Ark, that he "believe[s] that an objective trier-of-fact would find that Jones and [Brown] conspired to obstruct the protective and preventative apparatuses that I tried to avail myself of" to seek action from the union and FCA in response to Ark's harassment. However, Roseman offers no cogent rebuttal to the magistrate

judge's conclusion that he has failed to point to any evidence that demonstrates the commission of any actionable intentional tort by any of the defendants implicated in the conspiracy claims.

## F. Other Claims

The magistrate judge also addressed other claims that were pleaded in the second amended complaint, and Roseman has not advanced any substantial arguments against dismissal of those claims. The magistrate judge concluded that (1) the claim for intentional infliction of emotional distress must be dismissed because nothing in the record demonstrated the sort of "extreme and outrageous" conduct by any defendant or co-worker required to sustain that cause of action under Michigan law; (2) the plaintiff could not proceed to a jury on his negligent retention claim because there was no evidence in the record suggesting that Dominic Amond committed, or had any predilection to commit, any intentional tort against the plaintiff, or that FCA US, LLC had any reason to suspect that Amond was likely to commit any actionable tort; (3) the libel claims must be dismissed because (a) nothing in the written acknowledgment of a verbal warning that Roseman was prompted to sign was either false or defamatory, since it merely memorialized the content of the campaign flyers that Roseman admitted he posted (an example of which was attached to the amended pleading), and (b) even if the communication somehow could be construed as false and harmful to Roseman's reputation, it was privileged as a matter of law because it was an internal communication between management and labor representatives about the plaintiff's conduct within the scope of his employment; and (4) the Second Amendment claim must be dismissed because it is axiomatic that the Second Amendment only restrains government invasions of the right to bear arms, and none of the circumstances described in the amended complaint involved any official conduct. Roseman has not mounted any valid legal or factual challenge to any of those conclusions, and all of those remaining claims therefore will be dismissed.

III.

The magistrate judge properly considered the record and correctly applied the governing law in reaching his decision to recommend denying the plaintiff's motions and granting the defendants' motions.

Accordingly, it is **ORDERED** that the plaintiff's objections (ECF No. 103) are **OVERRULED**, the report and recommendation (ECF No. 102) is **ADOPTED**, the plaintiff's motions for summary judgment (ECF No. 77, 78) are **DENIED**, the defendants' motions for summary judgment (ECF No. 87, 89, 90, 91) are **GRANTED**, and all of the plaintiff's claims against the defendants are **DISMISSED WITH PREJUDICE**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Date:   November 17, 2020